# WILLIAM R. MILLER, Appellant, *v.* GABRIEL MARCKLE, Appellee.

## APPEAL FROM MORGAN.

It is erroneous to decree the foreclosure of a mortgage, alleged to have been executed in fraud of creditors, where no consideration was advanced by the mortgagee.

Where a transaction is tainted with fraud, as between the parties to it, a court will not assist either, but will leave them in the position in which they have placed themselves.

THIS case was submitted upon the following agreed state of facts.   The decree was rendered by WOODSON, Judge, at October term, 1858, of the Morgan Circuit Court.

At the October term, A. D. 1858, of the Morgan Circuit Court, Gabriel Marckle filed his bill for the foreclosure of two mortgages executed by William R. Miller, on the same tract of land.   Miller, at the same term of said court, filed his answer on oath, alleging that one of the mortgages was executed by him, to secure a note which he had executed to Marckle, without any good and valuable consideration, and that the same mortgage and note were executed by him, not to secure any

debt due and owing from him to Marckle, but were executed wholly and solely for the purpose of securing his property from his creditors, until he could get means to settle with them.

And at the same term of court, Marckle filed his replication to said answer, and the cause coming on to be heard on bill, exhibits, answer and replication, the court granted a decree of foreclosure of both of the mortgages, deciding that Miller had no right to make defense predicated on his own fraud; and the propriety of that decision, is the question which the parties agreed should be certified by the clerk of the said Circuit Court to the Supreme Court of this State, second grand division, January term, A. D. 1859, there to be reviewed without any further or fuller record.

The errors assigned are:

1st. The court erred in decreeing a foreclosure of both of said mortgages against defendant below.

2nd. The court erred in overruling the defense set up by defendant below, in his answer to complainant's bill.

3rd. The court erred in not dismissing complainant Marckle's bill, as to the alleged fraudulent mortgage.

C. EPLER, and KNAPP & CASE, for Appellant.

D. A. AND T. W. SMITH, for Appellee.

BREESE, J. From the agreed case, we think it clear, the Circuit Court erred in passing a decree of foreclosure of the mortgage, alleged to have been executed in fraud of creditors, for which the mortgagee had advanced no consideration.

We have examined carefully the numerous cases cited by the counsel on both sides, and draw from them the conclusion we have above announced.

The second section of our statute, (Scates' Comp. 542,) title "Frauds and Perjuries," is understood to be, substantially, a copy of the act of 13 Eliz. ch. 5, and of 27 Eliz. ch. 4, and they are but in affirmance of the common law, as it really was at and prior to the passage of those acts. *Cadogan* v. *Kennett,* Cowp. 434; *Hamilton* v. *Russell,* 1 Cranch, 309, 316; *Wilt* v. *Franklin,* 1 Binney, 502; *Hudnel* v. *Wilder,* 4 McCord, 295, 297; *Ewing* v. *Runkle,* 20 Ill. R. 448.

By this act, voluntary conveyances made to delay, hinder or defraud creditors, or to defraud or deceive purchasers, as against such creditors and purchasers only, are deemed fraudulent and void. A conveyance executed for such purposes, and without any consideration, or colorable only, and under the expectation that it would be surrendered to the grantor, or the property recon-

veyed to him, is no doubt binding on the parties, and their representatives. The cases refered to in 1 Am. Leading Cases, 59, cited by counsel for appellee, fully establish this principle, if authority was necessary. It seems so plain a proposition as scarcely to need the support of authority. The statute interposes only in favor of creditors and purchasers, for a valuable consideration, leaving the contract and conveyance as between the immediate parties, as they stood at the common law, and binding. But this refers to executed contracts only. All the cases cited by the counsel for the appellee, relate to such contracts or conveyances, and are recognized as law. In all such cases courts will not interfere to disturb them. If money has been actually paid, or property transferred, and the grantee put in possession, courts will not compel the money or property to be restored, or the party ousted. They will not, on the one hand, undo what has been done, nor on the other, perfect what has been left unfinished. Suppose the position of these parties reversed, and the appellant was seeking by bill in chancery, to rescind the mortgage, and for a surrender of the notes? The question carries with it its own answer. The court would not interfere—it would leave the parties where it found them; aiding neither. We would, say, you executed the notes and the mortgage for a fraudulent purpose—the act is binding on you, and you cannot have our aid to compel their surrender. So we say to the appellee here—you have the notes and mortgage—you were a willing party to a purposed fraud—we will give you no assistance to enforce the one or the other—equity aids not iniquity. Had an absolute deed of the premises been made, and the party put in possession, the court would not interfere to oust him.

To this extent is the doctrine as laid down by Story, 1 Story's Eq. Jurisprudence, sec. 298, page 317. "In general," he says, "where parties are concerned in illegal agreements or other transactions, whether they are *mala prohibita* or *mala in se*, courts of equity, following the rule of law as to participators in a common crime, will not, at present, interpose to grant any relief, acting upon the known maxim, *in pari delicto potior est conditio defendentis.*"

In note 3 to this text, he says, "I say *at present*, for there has been considerable fluctuation of opinion, both in courts of law and equity, on this subject. The old cases often gave relief, both at law and in equity, when the party would otherwise derive an advantage from his iniquity. But the modern doctrine has adopted a more severely just, and probably politic and moral rule, which is, to leave the parties where it finds them, giving no relief and no countenance to claims of this sort." Many cases

at law and in equity are referred to as supporting this modern doctrine, wherein the distinction is clearly recognized between contracts fully executed, and those which are executory merely—those which require no extraneous aid from courts or otherwise, to consummate them, and those which do require such aid.

A mortgage is but a security for the notes, which are the evidence of the debt, and requiring the aid of a court to foreclose the equities, it is, consequently, executory, and comes within the distinction we have endeavored to establish. We say to the party holding them, make the most you can of your position, but do not ask us to render you any assistance. We will leave you as we find you.

A strong case confirmatory of the views we have presented, is to be found in 10 Maine R. (1 Fairfield) 71, *Smith et al.* v. *Hubbs, Adm'r of Hubbs.* In this case it was insisted that a person could not defend himself by alleging and proving his own turpitude,—that when the plaintiff has proved the contract, and which appears to be fair and legal, that the defendant shall not be permitted, by way of defense, to prove that the contract was fraudulent and illegal, between the plaintiff and himself, and thus avail of his own wrong and violation of law.

Mellen, C. J., says, "Notwithstanding the emphatical manner in which the counsel contended for the above distinction, we are not aware of its existence except under a limitation which is not applicable to the case before the court. That limitation we will state. There is a marked and settled distinction between *executory* and *executed* contracts of a *fraudulent* or illegal character. Whatever the parties, to an action have *executed* for fraudulent or illegal purposes, the law refuses to lend its aid to enable either party to disturb. Whatever the parties have fraudulently or illegally *contracted to execute*, the law refuses to compel the contractor to execute or pay damages for not executing, but in both cases, leaves the parties where it finds them. The object of the law in the *latter* case is, as far as possible, to prevent the contemplated wrong; and in the *former*, to punish the wrong-doer by leaving him to the consequences of his own folly or misconduct."

Another case is to be found in 20 Wendell R. 24, *Nellis* v. *Clark*, where this distinction between executed and executory contracts is fully recognized. So in the case in 2 Foster, (N. H.) 523, *Demeritt* v. *Niles*.

The case of *Jones and Wife* v. *Read*, 3 Dana, (Ky.) 540, is to the same point. That case was this—The owner of a lot, with the intent to defraud a creditor, conveyed it to her daughter, and secretly took her daughter's bond for a re-conveyance, or the payment of a certain sum, which bond the mother after-

wards assigned to another daughter as an advancement. The first daughter married, and she and her husband sold the lot, and covenanted to convey it to a stranger, who, on being sued for the purchase money, filed his bill to have this incumbrance of the secret bond removed, or the contract rescinded. On the hearing, the court held that this bond, thus founded on a fraudulent conveyance, was itself infected with the fraud, and not an available equity against the title to the lot.

So in *Walker et al.* v. *McConnico*, 10 Yerger (Tenn.) 228, the court held that a promissory note executed without consideration, and with a view to protect the maker's property from his creditors, cannot be enforced against the maker by the payee.

In *St. Johns* v. *Benedict et al.*, 6 Johnson Ch. 111, on a bill filed for the specific performance of an agreement, where it appeared to have been made to defeat or defraud a creditor of the plaintiff or an intervening purchaser at a sheriff's sale, under a judgment and execution against him, the court refused to decree a specific performance. The court say in this case, " Shall this court help a party in the performance of an agreement made on purpose to defraud creditors ? " " The court will not interfere to enforce the specific performance of a contract iniquitous and fraudulent in its very foundation."

In *Bolt* v. *Rogers*, 3 Paige Ch. (N. Y.) 154, the court say, " Whenever two or more persons are engaged in a fraudulent transaction to injure another, neither law or equity will interfere to relieve either of those persons as against the other, from the consequences of their own misconduct."

It is pertinently asked by the appellant's counsel, if the maker of notes may, in a court of law, successfully defend against them, by showing that they were executed in fraud of creditors, why may he not, in a court of equity, interpose the same defense, when the mortgage given to secure those notes, is sought to be foreclosed ?

As a general principle, it is true that the same defense may be interposed against a suit upon the mortgage as against the notes for which the mortgage is but security. The mortgage must share the fate of the notes, and whatever will defeat the notes, should defeat the mortgage. The principle applying to the one is equally applicable to the other, and that principle is, as we have endeavored to maintain, that courts will not lend their aid to enforce contracts or agreements executory in their nature, originating in fraud. A promissory note, without the aid of a court to compel its payment, is but of little worth, and so with a mortgage ; neither can be enjoined without the aid of a court, unless the mortgage contains a power to sell, and in

this view it is but an executory contract. Originating in a fraudulent design, we do not see how a court of equity can preserve its distinctive characteristics, by aiding either party. It has nothing to do with frauds except to expose them, and, in proper cases to relieve against them—never to carry into effect, as between the parties, their own fraudulent designs.

One case has been much insisted on by the counsel for the appellee, as opposed to the views we have presented, which deserves some attention. It is the case of *Hawes* v. *Leader*, Cro. James, 270, and reported also in Yelverton, 196, and is the basis of the doctrine as found in Roberts on Fraudulent Conveyances, 641, also cited by him.

That case does conflict with the authorities we have examined and to which we have inclined. That case is this: "Debt against the defendant as administrator of Thomas Cookson, deceased; wherein the case appeared to be, that the said Thomas Cookson, for £20 paid by the plaintiff into his hands upon 9 the February 2 Jac., granted all his goods mentioned in a schedule annexed to the deed, and gave possession of them by a pewter dish, with a covenant, that he, his administrators, etc., should safely keep and quietly deliver them unto the plaintiff on his demand; and bound himself in £40 to the plaintiff for the performance of that covenant: Thomas Cookson afterwards died, and upon the 16 March, Anno 6 Jac., the plaintiff demanded the goods of the defendant being his administrator, who would not deliver them; whereupon the plaintiff brought this action, and in his declaration shews in *specie*, what goods were contained in the schedule. The defendant pleaded the statute of 13 Eliz., cap. 5, of fraudulent deeds and gifts, and further says that Cookson the intestate was previously indebted to sundry persons to £100, and made the deed of gift while so indebted, etc.; and that it was made of fraud and covin betwixt Cookson and the plaintiff to deceive his creditors. To this the plaintiff demurred, and it was adjudged for him, on the ground among others, assigned, that the statute makes the deed void only as against creditors, but not against the party himself."

In this case, the question was not made, whether a court ought to aid in the recovery of the goods or leave the parties as they were, and was not considered. It has not been followed by other courts, and does not seem to us so satisfactory and salutary as a rule, as the one we have laid down.

The rule we have adopted seems best calculated to frustrate the designs of parties who engage in transactions of a fraudulent character, saying to them most emphatically—keep what you have got, be it notes or mortgages, but seek not our aid to enforce the one or the other, or on the other hand, to relieve against them.

If an agreement be executed, this court will not rescind it; if executory, this court will not aid in its execution.

Another case to which reference has been made, *Findley* v. *Cooley*, 1 Blackf. 262, is against the views here expressed, and it may be sufficient to say, that the attention of the court in that case was not drawn to the distinction between executed and executory contracts—between those not requiring the aid of a court to enforce, and those which do require such aid.    The case seems to have been decided on the effect of the conveyance which was the executed contract, and not the notes which were the executory contract, and to which the maxim, " where parties are in equal fault, the condition of the defendant should be regarded as the best," would apply.

The decree of the court below is reversed.

WALKER, J.    I concur in the decision in this case, but do not concur in all of the reasoning in the foregoing opinion.

C. J. CATON, not having heard the arguments in this cause, gave no opinion.

*Decree reversed.*