SAMUEL W. DUNAWAY

*v.*

MARTIN W. ROBERTSON *et al.*

*Filed at Mt. Vernon June 14, 1880.*

1. FRAUDULENT CONVEYANCE—*what constitutes.* A bill in chancery, filed for the purpose of setting aside certain deeds which the complainant had executed to his father in the lifetime of the latter, or to compel the other heirs to make a reconveyance, alleged, that "fearing he might in the then future become involved in litigation which, because of its tediousness and expensiveness, would probably embarrass him, but not for the purpose of avoiding the payment of any debt or obligation, legal or equitable, due from him or previously contracted by him," complainant made out the deeds. It was *held*, the averment that the deeds were not made for the purpose of avoiding the payment of any debt or obligation, was but the statement of a conclusion, and did not relieve the conveyances of the fraudulent character attributable to them from the statement that they were made under an apprehension of embarrassment

from anticipated litigation. If made under the circumstances mentioned, the deeds were fraudulent as to creditors.

2. CHANCERY—*relieving a party from his own fraudulent acts.* Where a conveyance has been made for the purpose of defrauding the creditors of the grantor, equity will not interpose to restore to the grantor the title to the property so fraudulently conveyed.

3. For the same reason that there would be no interference by equity to set aside such conveyance when perfected, equity will not lend its aid to undo anything which has been done toward the making of such a conveyance.

4. So, where the owner of land, in apprehension of embarrassment from anticipated litigation, and to protect his land against the result of such expected embarrassment, executed deeds for the same to another, and put the same upon record, but never delivered the deeds, a court of equity refused to interpose in any way to aid the party thus intending to defraud his creditors, in doing away with the deeds or the record of them, but left him in the position in which he saw proper to place himself.

APPEAL from the Circuit Court of Williamson county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Mr. WILLIAM J. ALLEN, for the appellant:

The first question arising on the face of the bill is, What effect did the signing, sealing and recording of the instruments,—deeds they may be called,—have upon the title of appellant?

Until a deed is delivered it remains completely in the power of the grantor, and it is of no effect whatever as a conveyance; it must therefore be delivered, to give validity. 2 Bouvier's Institutes, sec. 2022; *Hatch* v. *Hatch,* 9 Mass. 307; *Jackson* v. *Leet,* 12 Wend. 105; *Fay* v. *Richardson,* 7 Peck, 91; *Whittaker* v. *Miller et al.* 83 Ill. 381; *Crocker et al.* v. *Lowenthal et al.* id. 579; *Hoig et al.* v. *Adrian College et al.* id. 267; *Stiles et ux.* v. *Probst,* 69 Ill. 382.

By *delivery* is understood the voluntary transfer of a deed from the grantor to the grantee, in such a manner as to vest a right in the latter and divest it out of the former. Greenleaf's Cruise, vol. 2, p. 42, note 1; 2 Bouvier's Institutes, *supra.*

It may be insisted, as it was below upon argument in support of the demurrer to the bill, that the complainant can

obtain no relief in a court of chancery because the attempted conveyance was fraudulent, when tested by the language of the fourth section of our statute upon "Frauds and Perjuries," and the construction given to this section by the courts.

It has already been shown that no valid conveyance was ever made, and a reference to the bill will as fully show that no *attempt* was ever made by appellant to perform any act obnoxious to the statute of Frauds and Perjuries. The bill alleges that appellant, "fearing he might in the then future become involved in litigation, which, because of its tediousness and expensiveness, would probably embarrass him, but not for the purpose of avoiding the payment of any debt or obligation, legal or equitable, due from him, or previously contracted by him," made out the deeds, etc. There is nothing in the bill to show that there were any creditors at the time, but even if there were, in the face of the express denial of any purpose to avoid the payment of any debts, legal or equitable, due from him or previously contracted, such creditors would have been compelled, in the event the conveyance had been perfected, to attack the same and show that it was fraudulent in law or in fact.

It is certainly true, that if the cloud upon appellant's title originated from his fraudulent design to hinder or delay creditors, and this is clearly shown on the face of the bill, a court of equity might hesitate before granting the relief. And if the signing, acknowledging and recording the deeds had been followed up by a delivery, and his design or conduct was fraudulent in the premises, appellant would not be heard by the chancellor in his application for relief against his own fraudulent act. For, as was said in *Miller* v. *Marckle*, 21 Ill. 152, courts of equity have nothing to do with frauds except to expose them, and in proper cases to relieve against them. If an agreement, fraudulent in character, be executed the court will not rescind it; if it be executory, the court will not aid in its execution, but will leave the parties where it finds them. But no such case or state of facts is here pre-

sented. No purpose was ever entertained, nor can it be in-
ferred from the bill, to disturb, hinder or delay any creditor,
existing or apprehended. It was an inconsiderate act on the
part of appellant to cause the deed to be recorded, but that was
simply an ill advised, premature act, free from any fraudulent
or improper purpose.

Mr. ANDREW D. DUFF, for the appellees:

The bill on its face shows no such a case as entitles the com-
plainant to relief. It shows that he and his wife, on April 8,
1876, conveyed the lands to Samuel W. Dunaway, complain-
ant's father, who died intestate in the following December.

The complainant tells the court that his motive for making
this conveyance was to shelter this property from the conse-
quences of impending litigation,—to hinder, delay, defeat,
or embarrass and retard creditors, or expected creditors, or at
least to deceive them for that time.

It is true, he says in this connection, "but not for the pur-
pose of avoiding the *payment* of any debt or obligation, legal
or equitable, due from him or previously contracted by him,"
etc.

But there are many heavy liabilities on men besides those
of mere contract. And, again, to render a deed fraudulent it
need not be made to avoid the *payment* of liabilities. It is
enough if it is intended to, in any wise, hinder or delay them.
*Phelps et al.* v. *Curts,* 80 Ill. 109; *Quarles* v. *Kerr,* 14 Gratt.
48; *Wheldon* v. *Wilson,* 44 Maine, 1; *Borland* v. *Mayo,* 8 Ala.
104; Bump on Fraudulent Conveyances, 19–20.

And as he admits the deeds were made to cover up his
property, every intendment of law is against him. He says
"he did not intend to avoid, etc., any legal or equitable
debts," but he is not the judge of the justness of his liabilities.
Courts will not allow a party to cover up his property against
liabilities, because he may regard them as unjust. *Brady* v.
*Briscoe,* 2 J. J. Marsh. 212; *Hack* v. *Mowre,* 17 Iowa, 195;
*Harris* v. *Harris,* 23 Gratt. ——; Bump on Fraud. Con. 491.

But appellant claims that the legal title to the land is still in him, and he only invokes the aid of a court of equity to remove the *cloud* occasioned by the record of these deeds. Whether the deeds operate to divest complainant's title or only constitute a cloud upon it, is wholly immaterial,— the injury or inconvenience against which he seeks relief, of whatever nature or character it may be, is by his bill shown to be the result of his own fraudulent act, an act performed by him in bad faith to some one, and therefore a court of equity will not lend its aid to relieve him, but will leave him just where he has placed himself, or where it finds him. *Miller* v. *Marckle*, 21 Ill. 152; *Phelps et al.* v. *Curts et al.* 80 id. 109; *St. L., J. & C. R. R. Co.* v. *Mather*, 71 id. 578.

There is no lack of authorities in support of the proposition that, although a voluntary conveyance is made without the knowledge of the grantee, and the deed has been kept in the hands of the grantor, a court of equity will not relieve against it. *Cecil* v. *Butcher*, 2 J. & W. 578; Kerr on Fraud and Mistake, 376.

A court of equity will not assist either party engaged in an illegal or fraudulent transaction. Kerr on Fraud and Mistake, 374-5-6.

And the court will even take the objection itself as to the illegality of the transaction, though the defendant does not interpose such objection, when it sufficiently appears from the bill or the evidence. *Hamilton* v. *Ball*, 2 Ir. Eq. 191–194; Kerr on Fraud and Mistake, 374.

These deeds, when taken in connection with the allegations in complainant's bill, contain nearly all the usual badges of fraud known to the law:

1, Litigation or suits were expected at the time of their execution; 2, a secret trust is created by them; 3, false recitals pervade the entire deeds; 4, the consideration is falsely stated; 5, possession is retained of the lands; 6, possession is retained of the deeds; 7, this transaction is certainly not in the usual course of business; 8, the relationship of the

grantor and grantee. Bump on Fraudulent Conveyances, pages 37, 39, 40, 42, 48, 50, 52 and 54.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The bill in this case alleges that on the 8th day of April, 1876, the complainant, Samuel W. Dunaway, was the owner in fee of certain lots and tracts of land situate in the counties of Williamson and Jackson in this State. That on that day, fearing he might in the then future become involved in litigation, which, because of its tediousness and expensiveness, would probably embarrass him, but not for the purpose of avoiding the payment of any debt or obligation, legal or equitable, due from him or previously contracted by him, complainant made out two several deeds of that date, purporting to convey the lots and tracts of land situate in the respective counties to Samuel Dunaway, his father, and had the deeds recorded in the respective counties, which deeds, after being recorded, were returned by the recorders to complainant, who has ever since retained the same in his possession ; that neither of the deeds was ever delivered to the said Samuel Dunaway; that he never paid any consideration for them, and did not until some time afterward know anything of the signing, acknowledging and placing upon record said deeds.

That it was complainant's purpose at the time to confer with his father about the transaction and induce him either to hold said lots and lands in trust for complainant, or pay him some consideration for the same, or advance him some money thereupon. That some time after the return of the deeds from the recorders' offices complainant mentioned the matter to his father, Samuel Dunaway, for the first time, who said that he did not want to have anything to do with the property, that his health was bad, and that he then had more real estate and general business on hand than he could well manage or attend to. That he did not want to invest any more money in real estate, and expressed a willingness to

reconvey the lands or to do anything necessary to render complainant's action in regard to the lands wholly null and void.

That while complainant and his father, Samuel Dunaway, were considering the best mode to be adopted in the premises, the said Samuel Dunaway died in the month of November, 1876.

The bill was filed against the widow and heirs at law of Samuel Dunaway, deceased, two of whom are minors, praying that the said deeds be declared inoperative and void; that the records of Jackson and Williamson counties on the margin where said deeds are recorded be made to show such decree, or that the lots and lands be conveyed to complainant. The circuit court sustained a demurrer to the bill and dismissed the same.

The complainant appealed to this court, and assigns for error the sustaining of the demurrer and dismissing the bill.

It is supposed that the deeds which were made in this case are not subject to the imputation of having been made in fraud of creditors, because of the averment in the bill that they were not made for the purpose of avoiding the payment of any debt or obligation. This is but the statement of a conclusion and does not control in the case.

The full allegation of the bill is that, " fearing he might in the then future become involved in litigation which, because of its tediousness and expensiveness, would probably embarrass him, but not for the purpose of avoiding the payment of any debt or obligation, legal or equitable, due from him or previously contracted by him," complainant made out the deeds.

The making out of the deeds under such circumstances, under such an apprehension, would be for a fraudulent purpose, as respects creditors, notwithstanding any assertion in the bill to the contrary.

They would be made in the apprehension of becoming involved in a tedious and expensive litigation which would

probably embarrass the complainant, and must be taken to have been made to protect the lands against the result of such expected embarrassment. Such a purpose would surely be a fraudulent one as against creditors.

Had such conveyances been fully perfected by the delivery of the deeds and their acceptance by the grantee, it is well settled that complainant could not have had them set aside. For the same reason that there would be no interference by equity to set aside such conveyances when perfected, equity will not lend its aid to undo anything which has been done toward the making of such a conveyance.

The rule is familiar that no man can be permitted to found a claim on his own iniquity—*frustra legis auxilium quærit qui in legem committit.*

It was held by this court in *Miller* v. *Marckle,* 21 Ill. 152, that where a transaction was tainted with fraud, as between the parties to it a court will not. assist either, but will leave them in the position in which they have placed themselves. In support of the decision the case of *Smith et al.* v. *Hubbs,* 10 Me. (1 Fairfield) 71, was cited, where Mellen, C. J., says: "Whatever the parties to an action have *executed* for fraudulent or illegal purposes, the law refuses to lend its aid to enable either party to disturb. Whatever the parties have fraudulently or illegally *contracted to execute,* the law refuses to compel the contractor to execute or pay damages for not executing, but in both cases leaves the parties where it finds them. The object of the law in the *latter* case is, as far as possible, to prevent the contemplated wrong, and in the *former,* to punish the wrongdoer by leaving him to the consequences of his own folly or misconduct." *Bolt* v. *Rogers,* 3 Paige, 154, was also cited, where the court say: "Whenever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct." In conclusion, in the case of *Miller* v. *Marckle,* it was said: "The rule we have adopted seems

best calculated to frustrate the designs of parties who engage in transactions of a fraudulent character, saying to them most emphatically, keep what you have got, be it notes or mortgages, but seek not our aid to enforce the one or the other, or, on the other hand, to relieve against them."

The signing, sealing, acknowledging and placing upon record the instruments in question, having been in the carrying out of what we regard as a fraudulent purpose, the complainant, in our opinion, has no standing in a court of equity to ask for its assistance to relieve him from the consequences of his own misconduct.

We are of opinion the circuit court properly sustained the demurrer and dismissed the bill, and the decree is affirmed.

*Decree affirmed.*