# JOHN H. KASSING

## v.

# JOHN M. DURAND AND HENRY C. DURAND.

*Real Property—Secret Trust—Fraud.*

1. He who goes into a court of equity seeking relief, must do so with clean hands.

2. A secret trust in real estate resting upon an agreement to hinder or delay creditors, will not be enforced.

3. A court of equity will afford no relief to a debtor who has transferred his property for the purpose of defrauding his creditors, and subsequently seeks as against the transferees to recover back the same.

[Opinion filed June 25, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

John H. Kassing filed his bill in the court below setting forth that about the first of September, 1876, he was the owner in fee simple of lots 4, 5 and 9, in block 14, in Newbury's addition to Chicago, subject to a mortgage to secure the payment of about $10,000, with interest thereon at the rate of nine per cent per annum, payable semi-annually; that at said time he was indebted to different people, which indebtedness he had not at that time the ready money to pay, although he was the owner of property worth more than enough to pay such indebtedness; that he was at that time acquainted with appellees, John M. and Henry C. Durand, who were then engaged in the wholesale grocery business in the city of Chicago, and he was then indebted to them, or the firm of which they were members, and that said firm held his promissory note therefor for the sum of $550; that being so indebted to appellees, and not having the ready cash at that time to pay the same, he went to them for the purpose of securing the payment of the note to them, and borrowing money from them to pay his indebtedness, and to take and follow their

advice in the matter of giving them security; and that he told them exactly how he was financially situated; what property he owned; that he wished to secure the payment of the note to them aforesaid, and to borrow money from them to pay his indebtedness; that it was then understood by them that he was the owner of the real estate heretofore mentioned and that there was then no money due on the said mortgage; and it was then suggested by a lawyer employed by said appellees, that the best way for them to obtain security for the payment of the promissory note held by them and the repayment of any money that they might loan to him, would be for appellees' firm to enter up judgment upon said note, to issue execution thereon, levy the same upon the real estate hereinbefore mentioned and sell the interest of appellant in said real estate and bid it in in the name of one or both of said appellees, and to wait until there was interest due upon the mortgage and not to pay the same, but to have the mortgage foreclosed, and at the foreclosure sale either one or the other of appellees should bid off said lots covered by the mortgage, in the name of one or the other of them, and take a deed therefor; and it was also suggested by said lawyer that appellant should file a petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, to be declared bankrupt, and to have an assignee appointed, and that said assignee in bankruptcy should sell and convey all the interest of appellant in said real estate, and that appellees, or one of them, would attend the sale thereof to be made by the assignee in bankruptcy and bid off said property and receive a deed therefor, and in that way appellees would be able to have in their own hands the legal title to said real estate, and it could be held by them as security to them for the payment of said note, and for the repayment of any and all moneys they should loan and advance for and on behalf of appellant; and it was then and there agreed between appellant and appellees that the aforesaid things suggested and advised by said lawyer should be done.

That accordingly appellant permitted appellees to obtain the title to said real property in the manner suggested; that

in pursuance of said arrangement on the 14th day of October, 1876, a judgment was entered in the Circuit Court of Cook County in favor of John M. Durand and Henry C. Durand, Calvin Durand and Cornelius E. Connolly, as plaintiffs, and against appellant as defendant, for the sum of $562 and costs; that execution was issued upon said judgment, and delivered to the sheriff of Cook County, and the sheriff thereupon levied upon the said real property on the 27th day of November, 1876, and sold appellant's interest in the same and improvements thereon for the nominal sum of $594, and issued to said John M. Durand a certificate of sale thereof; that afterward appellant, acting under the advice of said appellees and their lawyer, on the 4th day of November, 1876, filed his petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, and was declared a bankrupt, and Robert E. Jenkins was, on or about the 6th day of January, appointed assignee in bankruptcy of appellant's estate; and that thereafter, to carry out the arrangement with appellees, the interest coupon on said mortgage which next fell due was not paid, payment being withheld for the purpose of creating an excuse for foreclosing the said mortgage, and thereupon the United States Mortgage Company took steps to foreclose said mortgage; advertised for sale the property covered thereby, and sold the same on or about the 28th day of February, 1877; and that upon the suggestion of said appellees and their lawyer, appellant procured one Bernard Niggemyer to attend the sale, and as he is informed and believes, the said Niggemyer, and the said John M. Durand, and the lawyer of appellees, attended the sale, and the said John M. Durand bid off the said property at said sale, with all the improvements thereon, for the sum of $12,800, in the name of the said Henry C. Durand, said John M. Durand being the only bidder therefor, and that thereafter on the 28th day of February, 1877, the said United States Mortgage Company executed and delivered to said Henry C. Durand a warranty deed of the premises so sold at said foreclosure sale, and that thereafter, on or about the 26th day of March, 1877, the said Robert E. Jenkins, as assignee in bankruptcy, sold appel-

lant's interest in the real estate hereinbefore described, together with appellant's interest in other real estate, at public auction, to Henry C. Durand, for the sum of $315, and executed and delivered to said Henry C. Durand a deed of the premises so sold. The bill sets forth that after this was done the proceedings in bankruptcy were dismissed, but when is not stated. The bill further alleges that thereafter, on the 19th day of March, 1878, the said premises sold under said execution, not having been redeemed from the said sale made by the sheriff of Cook County, the said sheriff executed and delivered to the said John M. Durand a sheriff's deed of the premises so sold.

Appellant further sets forth in his bill that all of the aforesaid transactions were made under an arrangement with appellees for the purpose merely of placing the title to appellant's said real estate in the said appellees as security for the indebtedness of appellant to appellees' firm, and the money advanced by appellees to make said purchase, and such other moneys as appellees might have to advance for taxes and to protect their lien upon said property, and that lots 4 and 5 were, when he made the arrangement, worth $30,000, and lot 9 was then worth $2,000.

The bill sets forth that appellant remained in possession and control of said premises, rented the same, collected the rents, made repairs on them and paid appellees large sums of money down to the year 1886; that from some time in the year 1876 or 1877 down to 1886 he paid to appellees a large sum of money, the exact amount of which he is unable to state as he kept no account of the same, but trusted entirely to appellees' keeping a correct account thereof; that such payments were made by him to apply on the indebtedness he was owing to appellees for their advances as aforesaid; that how much money appellees advanced and paid out on account of said premises under their arrangement with appellant, appellant does not know, but that appellees have a full and complete account of the same; that in 1886, appellees notified appellant that he could collect no more rents from said premises, but they would employ a real estate agent to manage the property

for them, and that since 1886 appellant has not been allowed by appellees to have anything to do with the premises, but the rents have been collected and paid to appellees, and they are now in possession of the premises to the exclusion of appellant; and they now repudiate the arrangement which they made with him and insist that they took the title to said premises entirely for their own use and benefit and that appellant has no interest or right in or to said premises or claim upon them in any way whatever.

The bill prays for an accounting by appellees as to their receipts and expenditures on account of such premises, and that appellees be compelled to convey said premises to appellant, and to surrender to him all deeds, leases, writings and tax receipts which they or either of them have pertaining to said premises.

A demurrer to the bill was sustained and the bill dismissed; from the decree sustaining the demurrer and dismissing the bill, the complainant below has appealed.

Mr. A. B. Jenks, for appellant.

The first question is, can an absolute conveyance in equity be proven by oral testimony to be a mortgage?

That proof can be so made seems to be positively settled by the following authorities: 1 Jones on Mortgages, Sec. 293; Miller v. Thomas, 14 Ill. 428; Tillson v. Moulton, 23 Ill. 600; Shaver v. Woodward, 28 Ill. 277; Smith v. Cremer, 71 Ill. 185; Union Mutual Life Insurance Co. v. White, 106 Ill. 67; Workman v. Greening, 115 Ill. 477; Slee v. Manhattan Company, 1 Paige Chy. 48.

Has the statute of frauds any application to a case of this kind, in equity, where a fraud was perpetrated by the persons in obtaining the legal title to real estate from the owner, and who now seek to maintain such legal title as against the owner of the property?

It is said that " the correct view appears to be that equity will at all times lend its aid to defeat a fraud notwithstanding the statute of frauds." Browne on Statute of Frauds, 3d Ed., Sec. 438.

"A simple illustration of the rule that when the statute of frauds has been used as a cover to a fraud, equity will relieve against the fraud, notwithstanding its provisions, is found in a case reported by Viner, and stated by him to have occurred in Lord Nottingham's time, and to have been the first instance in which any equitable exception to the statute appears. There was a verbal agreement for an absolute conveyance of land, and for a defeasance to be executed by the grantee; but he, having obtained the conveyance, refused to execute the defeasance, and relied upon the statute; but his plea was overruled and he was compelled to execute according to his agreement. Here the attempted fraud consisted, not merely in refusing to do what he agreed, but in deceiving the plaintiff out of his property." Browne on Stat. of Frauds, 3d Ed., Sec. 441.

"It was not intended by the adoption of the statute (frauds) to facilitate the perpetration of and to protect fraud, but to prevent it; and the courts have never lent themselves to assist or protect fraud, which the statute did not sanction by its adoption. The courts will not permit the statute to be used as an engine of fraud, as its purpose was its suppression." Union Mutual Life Ins. Co. v. White, 106 Ill. 67.

"The question is presented on this record whether, as the transaction has assumed the form of a sale, a court of equity can effectuate the original intention of the parties, by declaring it a mortgage. It is objected that the agreement, resting alone in parol, the statute of frauds will prevent it from being carried into effect. Under Sec. 12 of our Conveyance Act, and upon general equitable principles, this court repeatedly held that deeds in form absolute, might be shown to be mortgages in fact. Such has been repeatedly held, as in the case of Wynkoop v. Corning, 21 Ill. 570, it was said that courts are not estopped from looking into all the facts and circumstances of a deed absolute on its face, to ascertain whether a loan of, and security for, money was really intended." Reigard v. McNeil, 38 Ill. 400.

"Courts of equity strongly incline to treat all securities for money, or to indemnify, as mortgages; and when a purchaser

Kassing v. Durand.

of lands, at or before a judicial sale, promises to extend the redemption beyond the time allowed by law, the transaction will be treated as a mortgage of the land sold, the real right of the creditor extending no further than full satisfaction of his debt. All such cases, however, are controlled by the circumstances attending them." Pensoneau v. Pulliam et al., 47 Ill. 58.

In the case of Slee v. The President and Directors of the Manhattan Company, 1 Paige Chy. Rep. 47, it is said by Judge Betts (page 55): "It is unquestionably the rule of this court and at law, that a deed, however absolute the terms may be upon its face, if really only intended to secure a debt, will be deemed a mortgage, though the defeasance is by parol. 1 Johns. Chy. R. 594; 4 Id. 167; 6 Id. 417; 7 Id. 40. It never loses the character and quality of a mortgage, and the right of redemption, as an inseparable incident, can not be restrained or clogged, even by the stipulation of the parties. Clark v. Henry, 2 Cowen, 324, in error. Lapse of time, in this case, can not affect the remedy; for as against the mortgagor, possession by the mortgagee for any period short of twenty years will not bar the equity of redemption. Anon. 3 Atk. 213; Moore v. Cable, 1 Johns. Chy. R. 385."

Messrs. M. B. & F. S. Loomis, for appellees.

The transaction, being in fraud of creditors, can not be successfully assailed by either of the parties thereto.

In the case of Dunaway v. Robertson et al., 95 Ill. 419, the court say (at page 426): "The rule is familiar that no man can be permitted to found a claim on his own iniquity—*Frustra legis auxilium quaerit qui in legem committit.*" The court continues to say: "It was held by this court in Miller v. Marckle, 21 Ill. 152, that where a transaction was tainted with fraud, as between the parties to it, a court will not assist either, but will leave them in the position in which they have placed themselves." In support of the decision the case of Smith et al. v. Hubbs, 10 Me. (1 Fairfield) 71, was cited, where Mellen, C. J., says: " Whatever the parties to an action have executed for fraudulent or illegal purposes, the law refuses to lend its

aid to enable either party to disturb. Whatever the parties fraudulently or illegally contracted to execute, the law refuses to compel the contractor to execute or pay damages for not executing; but in both cases leaves the parties where it finds them." The object of the law in the latter case is, as far as possible, to prevent the contemplated wrong, and in the former, to punish the wrongdoer by leaving him to the consequences of his own folly or misconduct. Bolt v. Rogers, 3 Paige, 154, was also cited, where the court say: "Whenever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct." In conclusion, in the case of Miller v. Marckle, it was said: "The rule we have adopted seems best calculated to frustrate the designs of parties who engage in transactions of a fraudulent character, saying to them most emphatically, keep what you have got, be it notes or mortgages, but seek not our aid to enforce the one or the other, or, on the other hand, to relieve against them."

The case above cited (Dunaway v. Robertson et al.), like the case at bar, was heard and decided on demurrer to bill of complaint. The bill was filed for the purpose of setting aside certain deeds which the complainant had executed to his father, in the lifetime of the latter, or to compel the other heirs to make a re-conveyance, alleging that "fearing he (complainant) might in the then future become involved in litigation, which, because of its tediousness and expensiveness, would probably embarrass him, but not for the purpose of avoiding the payment of any debt or obligation, legal or equitable, due from him, or previously contracted by him," complainant made the deeds. It was held that averment in the bill that the deeds were not made for the purpose of avoiding the payment of any debt or obligation, was but the statement of a conclusion, and did not relieve the conveyances of the fraudulent character attributable to them by reason of their being made under an apprehension of embarrassment from anticipated litigation.

So in the case at bar, the assertion of appellant in his bill

"that he had no intention whatever of hindering or delaying his other creditors," is but the statement of a conclusion and does not relieve the transaction narrated of the fraudulent character attributable to it by reason of its evident intention to defraud the creditors of appellant. It is not necessary there should be any actual defrauding of creditors intended. It is sufficient if there was an intention to place property beyond their reach for the time being. Phelps v. Curts, 80 Ill. 109; Nesbitt et al. v. Digby et al., 13 Ill. 387; Fitzgerald v. Forristal, 48 Ill. 228; Ryan v. Ryan, 97 Ill. 38.

A debtor in failing circumstances is only allowed to place his property beyond the reach of his creditors by making a general assignment of it; by devoting it unreservedly to the payment of his debts; and not with a view to his advantage in delaying until a favorable time the appropriation of the property for such purposes. Nesbitt et al. v. Digby et al., *supra;* Phelps v. Curtis, *supra.*

A transaction consisting of a purchase, through a third person, of mortgaged premises at a foreclosure sale, may be deemed fraudulent as to the mortgagor's creditors, the evidence showing a scheme to keep the land from them by means of the foreclosure and purchase. Simmons v. Johnson, 48 Hun (N. Y.), 131.

A party to a covinous transaction intended to cover the property from creditors, shall not give in evidence his own fraud, whether it be an absolute deed or a mortgage, or however it be mingled with other arrangements between the parties. Gill v. Henry, 95 Pa. St. 388.

An intent to delay creditors must be conclusively presumed from a conveyance which does delay them. In re Smith, 4 Ben. 1.

A secret trust in real estate, resting upon an agreement made to hinder and delay creditors, will not be enforced. Fast v. McPherson, 98 Ill. 496; Moore, Adm'r, etc., v. Wood, 100 Ill. 451; Tyler v. Tyler, 126 Ill. 525.

The grantor of a deed made to baffle creditors, can not be relieved against its operation, though it was in fact intended as a mortgage. Ybarra v. Lorenzana, 53 Cal. 197; Lill v. Brant, 6 Ill. App. 366.

A conveyance of land made by a debtor to his attorney at the suggestion of the latter, with mutual intent to defraud the client's creditors, vests the legal estate as between the parties to the deed. York v. Merritt, 80 N. C. 285.

The fact that judgments were confessed for *bona fide* debts, does not exclude fraudulent intent, especially where the manner in which the judgments were confessed, the agency resorted to, and the use made of them, stamp the transaction as an attempt to keep creditors at arm's length, and to enable the debtor to retain possession and control the property. Abey v. Schwab, 31 N. Y. S. R. 139.

If a man, knowing that a scheme is fraudulent, and that the natural outcome of it will be to defraud some innocent person, goes into it solely for the purpose of making money out of it, though he may not be equally in fault with another who is the moving party in the fraud, and influences him by his persuasions and representations, a court will, on the ground of public policy, deny him any relief against the other party. Knight v. Linzey (Mich.), 45 N. W. Rep. 337.

Numerous other cases to the same effect as those already referred to might be cited, establishing beyond question the doctrine that, while transactions of the kind narrated in appellant's bill of complaint, are, or may be void as to existing creditors, they are perfect and effectual as between the parties, and can not be set aside by either of them in case they become dissatisfied with the transaction.

The alleged agreement of appellees to re-convey constituted an express trust, and, being verbal, was void under the statute of frauds.

The bill of complaint sets up, in direct and express words, a positive *verbal* agreement on the part of appellees to re-convey to appellant the premises in question; there is no pretense that any contract, agreement or memorandum *in writing* of any kind was ever made or signed by them, or either of them, to that effect; and nothing is shown to take the case out of the operation of the statute.

The statute provides (Sec. 9, Chap. 59) that "All declarations or creations of trusts or confidences of any lands,

tenements or hereditaments shall be manifested and proved by some writing signed by the party, * * * or else they shall be utterly void and of no effect. *Provided*, that resulting trust or trusts, created by construction, implication or operation of law, need not be in writing, and the same may be proved by parol."

There can be no pretense in this case that there was a *resulting* trust within the exception of the statute, as a *resulting* trust can not be created unless the money of the *cestui que trust* (appellant) was used in acquiring title to the property. It can not be created by agreement or contract. Remington v. Campbell, 60 Ill. 516; Sheldon v. Harding, 44 Ill. 68; Holmes v. Holmes, 44 Ill. 168; Roberts v. Ware, 40 Cal. 634.

It must, moreover, be shown that the money was actually paid, directly or indirectly, by appellant. It is not sufficient to show that he requested appellees to do so, and promised to repay them what they paid for the same. Kendall v. Mann, 11 Allen 17, 546; Baxter v. Baxter, 22 Cal. 579.

Appellant does not claim that any of his own money was used in the purchase, either at the sheriff's sale, the mortgagee's sale, or the sale under the bankruptcy proceedings, through which several proceedings appellees acquired title, but concedes that appellees furnished the money, but agreed verbally to re-convey on being reimbursed therefor by him.

In the case of Stephenson v. Thompson, 13 Ill. 186, where an agreement existed in parol between A and B, that A should pay for certain lands, and on being reimbursed by B therefor, A should convey them to B, and the lands were sold at sheriff's sale and bought by A with his own money, and conveyed to him by the sheriff, it was held that the contract between A and B, being verbal, was void under the statute of frauds.

If the bill had sought to establish a *resulting* trust, by construction, implication or operation of law, it would have been no defense to have alleged that the trust was not created by some instrument in writing. But, as stated, the bill alleges an *express* trust, and to this allegation the defense that the agreement to re-convey—or declaration of trust—is not in writing, is applicable. Scott v. Harris, 113 Ill. 447; Biggins v. Biggins, 133 Ill. 211; Adams v. Adams, 79 Ill. 517; Wilson v.

McDowell, 78 Ill. 514; Lill v. Brant, 6 Ill. App. 372; Green
v. Coates, 73 Mo. 115.

WATERMAN, J.   The bill filed by appellant is for the enforce-
ment of a contract alleged to have been made by him with
appellees.

The first question that arises is, whether the contract as
stated is one which a court of equity will enforce.   The rule
that no one should be permitted to take advantage of his own
wrong—*Nullus commodum eapere potest de injuria sua pro-
pria*—is familiar.

We are therefore called upon to inquire what it really was
that appellant alleges was agreed to be done, and what has
been done in pursuance of such agreement.

The allegation is made that he told appellees that he wished
among other things to borrow money of them with which to
pay his debts, and that they expressed a willingness to loan
him money for such purpose; but it does not appear that any
attempt to obtain money for such purpose was actually ever
made.   Practically, according to the bill, the advances and
the application for advances were confined to the money
necessary to buy in for the use of appellant his property when
offered for sale.

That the scheme was one well calculated to enable appel-
lant to defraud his creditors, is apparent.

Lots 4 and 5 were at the time he made this arrangement,
worth $30,000, and lot 9 was then worth $2,000.   Upon these
the only incumbrance shown to have existed was for the sum
of $10,620.   In this property appellant had an equity of over
$20,000, yet he arranges to have it sold, and it was sold to
appellees, first on a judgment for $562, then two of the lots
were sold for $12,800 on the mortgage.   A secret trust, as
appellant says, was created in his favor, he apparently having
lost this valuable equity.

Next, as a part of the arrangement, and lest some of his
creditors might redeem from the judgment sale or seek to
reach his secret equity, he filed a petition in bankruptcy.   By
this last proceeding appellant practically stayed the hands of
his creditors, suspended the operation of the ordinary reme-

dies they possessed, and compelled them to go into the bankrupt court in order to reach his property.

By the adjudication of bankruptcy the valuable secret equity which he had in this property passed to his assignee, became a bankrupt asset to be sold, the proceeds thereof to be divided among his creditors.

Appellant also, by the filing of his petition in bankruptcy, placed himself in a position where he might, by the payment of but a percentage upon the claims against him, obtain a discharge that would free him from all his indebtedness.

In this proceeding, in which, under his solemn oath, he summoned his creditors into a court of his own choosing and compelled them there alone to look for the ascertainment and payment of their claims, he was bound to the exercise of the utmost good faith. It nowhere appears in the bill he has filed in this cause, that in the bankruptcy court he at any time disclosed the fact of his ownership of the valuable equity in this property, he now tells us that he then had. So far as appears, his creditors and his assignee were suffered to remain in ignorance of this, a fact which it was his moral and legal duty to at once make known.

That he did not do so, and that his creditors were defrauded by his action and his silence, is apparent from the fact that this valuable equity, amounting to over $20,000, was on the 26th day of March, 1877, sold by Robert E. Jenkins, his assignee, to Henry C. Durand, for his, appellant's, use and benefit, for the sum of $315.

And the arrangement for this proceeding under which his creditors were swindled out of this great sum, a court of equity is now asked to lend its aid in carrying out.

As to the lots alleged to have been worth the sum of $30,000, the work of secreting all evidence of appellant's title and interest seems to have been complete February 27, 1877. As to the remaining lot, then worth $2,000, the right of creditors to redeem was finally cut off March 19, 1878.

Appellant began, as he says, to collect rents and pay them over to appellees; this continued until 1886; appellant keeping no account of how much he thus paid over, as he neither kept nor asked for an account of what appellees had paid for

or kept on behalf of the premises. Twelve years thus passed away, when appellee saw fit to, as they told him, employ another real estate agent to look after the property; nearly four years after this he filed his bill.

It is a fundamental principle that he who goes into a court of equity seeking relief, must do so with clean hands.

The allegation in the bill that appellant had no intention of hindering or delaying his creditors, is similar to that made in the case of Dunaway v. Robertson, 95 Ill. 419, concerning which the court say: "This is but the statement of a collusion and does not control in the case."

The arrangement for an actual sale of appellant's property under the circumstances described would be for a fraudulent purpose as regards creditors, notwithstanding any assertions to the contrary. Dunaway v. Robertson, *supra*.

One of the most common occasions for the enforcement of the rule that he who comes into equity must do so with clean hands, arises in cases where a debtor has in any manner transferred his property for the purpose of defrauding his creditors and afterward seeks as against the transferee to recover back the property. The door of a court of equity is always shut against such a claimant. Pomeroy's Equity Jurisprudence, Sec. 401; Wheeler v. Sage, 1 Wall. 518; Bolt v. Rogers, 3 Paige, 156; Riedle v. Mulhausen, 20 Ill. App. 68; Ryan v. Ryan, 97 Ill. 38; Fitzgerald v. Forristall, 48 Ill. 228; Phelps et al. v. Curts et al., 80 Ill. 109; Nesbit v. Digby, 13 Ill. 387.

It it true that according to the allegations of the bill, appellees were engaged with appellant in a fraudulent scheme, but in such case the rule is *in pari delicto potior est conditio defendentis*. Miller v. Marckle, 21 Ill. 152.

A secret trust in real estate resting upon an agreement to hinder or delay creditors, will not be enforced. Fast v. McPherson, 98 Ill. 468; Moore v. Wood, 100 Ill. 451.

The agreement as stated was one which could not fail to hinder and delay creditors; the bankruptcy proceeding alone hindered and delayed them.

Appellant did not make or state in his bill a cause entitling him to relief in a court of equity, and the bill was properly dismissed.                    *Judgment affirmed.*