ELISHA C. SPRAGUE

*v.*

AMANDA J. CRAIG.

1. EVIDENCE—*breach of promise to marry.* It is competent, in an action for a breach of promise of marriage, for the plaintiff to prove that she appeared to be sincerely attached to the defendant.

2. SAME—*admissibility of—in mitigation of damages.* And where the plaintiff, in such case, had introduced evidence to prove that the defendant was a man of large wealth, for the purpose of increasing the amount of damages sought to be recovered, it was competent for the defendant to offer, in rebuttal, evidence of the fact that property belonging to the defendant had, without his consent, been sold since the commencement of the suit, to satisfy pre-existing indebtedness, under a mortgage given to secure the same prior to a breach of the contract for which this suit was brought.

3. It is also admissible for the defendant, in such case, to introduce evidence, in mitigation of damages, of the fact that he was afflicted with an incurable disease, at the time of the breach of the promise to marry.

4. SAME—*of general character—when admissible.* Where a defendant, in an action for a breach of promise of marriage, to avoid a recovery of damages for the breach, and in justification of the breach, introduces evidence that the plaintiff has been guilty of the crime of procuring an abortion, or of acts of unchastity, it is admissible for the plaintiff, in such case, to rebut such testimony by evidence of general good character, and thereby render it improbable that the charge is well founded.

5. BREACH OF PROMISE OF MARRIAGE—*effect of unchastity.* When a party enters into an engagement to marry, with a knowledge that the other party was unchaste, he will be deemed to have waived the objection, and can not afterward set it up as a reason for his refusal to comply with his promise. But if either party shall be guilty of acts of unchastity subsequent to the engagement, the other party is absolved from the contract, whether such subsequent acts be known to the latter or not.

6. CONTUMACIOUS WITNESS—*punishment of—how far discretionary.* Where a witness, introduced by a party, refused to testify, the degree of punishment to be inflicted upon the witness, for his contumacy, is so far a matter of discretion with the court below, that its action in respect thereto can not be reviewed in the appellate court.

7. PRACTICE—*of the introduction of evidence—after testimony is closed.* Permitting evidence to be introduced after the testimony is closed, is a matter of discretion with the judge trying the case, and he alone can determine whether such evidence shall afterward be admitted, under such restrictions as shall work no injury to the opposite party.

8. READING LAW—*to a jury.* The court may, in civil cases, refuse to permit counsel to read law to a jury, and this cannot be assigned for error. It is the province of the court, in such cases, to interpret the law for the jury, and not for the jury to interpret the law for themselves.

WRIT OF ERROR to the Circuit Court of Du Page county; the Hon. SYLVANUS WILCOX, Judge, presiding.

The opinion states the case.

Mr. MILTON F. PETERS, for the plaintiff in error.

Messrs. STORRS & WILSON, for the defendant in error.

19—51ST ILL.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, in the Circuit Court of Cook county, against appellant, to recover damages for an alleged breach of a contract of marriage. The declaration contained several counts, stating the contract in different modes, and a promise to marry at different times. Appellant filed the general issue. Subsequently the venue was changed from Cook, to the Circuit Court of Du Page county, and a trial was had in the latter county, before the court and a jury, resulting in a verdict and judgment in favor of plaintiff below. A motion for a new trial was interposed in apt time, but was overruled by the court; and the case is brought to this court by appeal, and various errors are assigned upon the record.

It is insisted that the court below erred in permitting appellee's attorney to ask her mother, and the question to be answered, whether appellee, from her conduct, was or not sincerely attached to appellant. The question was, we think, proper. It simply asked for the appearance, as evidence of a fact. It was not whether appellee was sincerely attached to appellant, but was, substantially, whether appellee appeared to be so attached, and to this we see no objection. An affirmative answer to this question would have been understood by the jury as only referring to appearances, and not to existing facts. The jury should, no doubt, be left, under ordinary circumstances, to hear evidence and to draw conclusions, unless it be in questions of science or skill, when experts are permitted to testify to inferences or opinions. The witness might have been asked as to the manner or conduct of appellee, but not as to her feelings or sentiments. The witness might testify whether appellee acted towards or treated appellant as though she was attached to him, and this is proper, as it was important that the jury trying the issue should be fully informed of the circumstances attending their engagement, if one existed, and this question only called for such facts. Sincere

attachment can only be determined by such a variety of
kindly acts, and by respectful manner, that it would be exceed-
ingly difficult to describe them in detail, and hence a witness
may be asked whether a party appeared to be, or acted as
others do who are, attached to another. In *Greenup* v.
*Stoker*, 3 Gilm. 202, this question was asked, " did the defen-
dant court her ?" which was held to be proper, as it was an
inquiry in regard to a fact. And the question in this case is
of the same character, and was, therefore, admissible.

It is next urged, that the court below erred in refusing to
permit appellant to testify whether, without his consent, pro-
perty had been sold, subsequent to the commencement of this
suit, under mortgages previously given for indebtedness. We
see no objection to such evidence. Appellee had introduced
evidence tending to show that appellant was a man of large
wealth, for the purpose of enhancing the damages, and it was
but reasonable to permit him to show that property which had
been taken into the estimate by appellee's witnesses, had been
sold to satisfy debts incurred before the breach of the contract,
although sold subsequently. This evidence was important,
not as a defense, but as a means of enabling the jury to arrive
at a just verdict in assessing damages. If the indebtedness
was just and fair, and existed before the breach of the contract
occurred, then such proof was proper for the purpose of rebut-
ting.

Nor can it be urged, that it enters too much into detail on
a collateral issue. The evidence does not relate to an estimate
of all his debts and all the property he owned prior to and
at the time of entering into the marriage contract, if it was
ever made, or at the time of its alleged breach. It was evi-
dence as to but one or two pieces of property. Nor do we
see any objection to proving the extent of his indebtedness at
the time the alleged contract was entered into by the parties.
Without appellant should be permitted, in general terms, to
show such liability, appellee would possess great and unjust
advantages in the question of the measure of damages. Such

questions, then, as related to his indebtedness at the time of the alleged breach, and the sale of property even after the breach, without collusion, to pay such indebtedness, under mortgages or deeds of trust, would be proper, and should have been admitted. To permit proof of indebtedness or sales by appellant, or with his consent or by his procurement, occurring after the alleged breach, would be improper, as it would place it in the power of a defendant, in such cases, to prevent the recovery of punitive damages, by incumbering or selling his property after the breach had occurred. But up to that time, the presumption would not obtain that such indebtedness or incumbrances were fictitious.

No objection to the mode of making the proof seems to have been interposed, and we have considered it with reference to its applicability to the issues in the case. The questions, whether he owned any real estate, or whether he was solvent or insolvent at the time of the trial, were improper, and were properly rejected. They would have embraced indebtedness real or fictitious, sales genuine or fraudulent, after the time the breach is alleged to have occurred, and hence it would have been improper to permit them to be answered.

It is also objected, that the court erred in refusing to permit appellant to give evidence that he was incurably diseased. This evidence was not offered to show a defense, or to prevent a recovery, but for the purpose of reducing the damages. All must know that a marriage with a healthy person, free from all disease, would, when all things else were equal, be more desirable than with a person with an incurable and offensive disease. This being so, it was evidence proper to have gone to the jury, that they might determine, the more certainly, the true and proper extent of the damages sustained.

When a witness obstinately refuses to testify, and is contumacious after imprisonment, we can perceive no means of relief to the party who desires his testimony, unless it be by an action against the witness to recover for the consequential

injury he has thus inflicted upon the party.   It is not required that the court shall continue the cause from day to day for days, weeks, and, it may be, for months, until an obstinate witness shall yield to the requirements of the law, and shall discharge a plain duty and enable justice to be done between litigants.   It is the duty of the court, in such cases, to fine and imprison a witness who perversely refuses to testify, until he yields obedience to the law, but the extent of the fine or the imprisonment is a matter collateral to, and does not concern the parties litigant, only so far as it may incidentally affect their rights by compelling the witness to testify.   But the extent of the punishment to be inflicted, within reasonable bounds, is a matter of discretion with the court, and the punishment is inflicted to punish the witness and to vindicate the law, and not merely for the benefit of the parties.

A party charged with crime may generally resort to proof of his general good character, and the prosecution may rebut by proof that such character is bad, but will not be permitted to prove special acts of breach of law or criminal conduct.   In such cases, both parties are confined to general character, and are not allowed to give evidence of particular acts.   As a general rule, the prosecution, or in civil actions the defense, have no right, until the accused in the one case or the plaintiff in the other, has put his character in issue, to introduce evidence of general character.   But in slander, it has been held, that by bringing the action the plaintiff puts his general character in issue, so far as the measure of damages is involved, and the defendant, in mitigation, may show that his general character is bad.   And by charging a person with crime in a criminal prosecution, the people attack the defendant's character, and the law permits him to show that his general character is good, for the purpose of repelling the charge.

And when the defendant, as he may, to avoid a recovery of damages for the breach of agreement to marry, seeks to excuse and justify himself for refusing to perform the agreement by showing that the plaintiff has been guilty of the crime of

procuring an abortion, or acts of unchastity, the attack upon the character of plaintiff is as direct as in the case of an indictment for a crime, or a suit against a defendant for a fraud. And no reason is perceived why, when such an attack is made, although it comes from a defendant instead of the plaintiff, the latter should not be permitted to prove general good character, for the purpose of rendering it improbable that the charge is well founded. The reason for doing so is the same in one case as in the other. The two cases are entirely analogous, and no just reason is perceived why the same principle should not apply. We perceive no error in admitting this evidence.

As to permitting evidence to be introduced after the testimony was closed, it was a matter of discretion in the judge trying the case, as this court has held in a number of cases. It must be remembered that courts are instituted for the administration of justice, and when, from a want of information on the part of either litigant, or if from accident or fraud a party has been deprived of material testimony until the evidence is closed, it lies in the discretion of the circuit judge to determine whether it shall afterwards be admitted, under such restrictions as shall work no injury to the opposite party. The judge allowing it would afford an opportunity to cross examine, or to rebut such evidence, to the other party. It not unfrequently happens, that a witness has failed to recollect an important fact while on the stand, but after he has left the stand, he recalled it to his mind; and shall it be said, that because he failed to state it when giving his evidence, he shall not be permitted to perform his oath that he would tell the whole truth, simply because he did not remember it at the particular moment? Shall mere form, and that, too, under the control of the judge, be permitted to prevent the attainment of justice?

As to preventing counsel from reading law to the jury, the court committed no error. It is for the court to instruct the jury as to what the law is which governs the case, and not for

the jury to determine it for themselves, by having law books read to them. In civil cases, the jury must take the law from the court. *Fuller* v. *Talbot*, 23 Ill. 357.

We now come to the consideration of the objection taken to appellee's instructions. The fifth of those instructions should have been modified before it was given. At its close, it seems to ignore all the defenses insisted upon but that of unchastity. From it, the jury would readily infer that if appellee had not been guilty of unchastity without the knowledge of appellant, she should recover. That is the only defense recognized by the instruction. And it was erroneous, for the reason that if she was shown to be unchaste after an engagement to marry was entered into, that fact released appellant from the agreement, whether he knew the fact or not, as a party cannot be required to marry another who is not virtuous, unless, knowing the fact, the objection is waived. And when the engagement is entered into, the presumption is, that the parties have satisfied themselves in reference to their previous character, and that all previous conduct of that kind is waived by the engagement. But if either party is guilty of subsequent acts of unchastity, the other party is absolved from the contract, and need not perform it. This instruction may have misled the jury, and should have been refused or modified before it was given. We perceive no other objection to the instructions given for appellee.

The judgment of the court below must be reversed and the cause remanded.

                          *Judgment reversed.*