57  253
24ap291

57h 253
53ad349

CHARLES RYAN, BY ELIZA RYAN, GUARDIAN AD LITEM, RESPONDENT, *v.* PORTER MANUFACTURING COMPANY (LIMITED), APPELLANT.

*Negligence — effect of continuing in the master's employment after knowledge of defects in a floor — evidence as to complaints made by the injured party — practice of reading law to the jury.*

In an action brought to recover damages for the alleged negligence of the defendant in the construction of a floor in its boiler shop, which, in consequence thereof, gave way causing some material to fall upon the plaintiff, an employee of the defendant, and breaking his leg, it appeared that the plaintiff had been in the employment of the defendant, at the time of the injury, for about eight months, and had had an opportunity to see how the floor and its foundation were constructed; that at the time of the accident he was engaged with others in bringing sheets of boiler iron, weighing about 290 pounds per sheet, into the shop and piling them upon a table.

*Held,* that, under the circumstances of this case, the court was properly requested to charge the jury: "That if the plaintiff was capable of and had the opportunity, by knowing thereof prior to the accident, of judging of the propriety of the form of construction of defendant's floor, then, having continued in its employ, he cannot recover."

Upon the trial the plaintiff's mother was called as a witness and testified: "His suffering was bad; very hard; I guess I know; he complained of great suffering, I was up day and night with him." She was thereupon asked: "Well, commence at the early part, just as he was placed in bed and being taken home, and state what complaints of bodily pain he made, or what you observed as to his condition of suffering;" and, under objection, testified: "Well, he complained of his back, in the first place, and pain in his leg." Q. "What complaint did he make? Tell the jury, so that they can hear you, how bad he suffered." A. "Well, he complained many times that they hurt him so that he did not know that he could live through it," etc.

*Held,* that the evidence, so far as it related to statements made long after the accident, was not competent.

The practice of counsel in reading the law to the jury, condemned.

APPEAL by the defendant, the Porter Manufacturing Company (Limited), from a judgment of the County Court of the county of Onondaga, entered in the office of the clerk of the county of Onondaga on the 18th day of May, 1888; and also from an order of the said County Court denying a motion, made upon the minutes of the court for a new trial, and entered in said clerk's office on the 18th day of May, 1888.

The action was tried before the court and a jury, and a verdict was rendered in favor of the plaintiff for $750, damages claimed to have resulted from the alleged negligence of the defendant in so constructing a floor in its boiler shop, in Syracuse, that the leg of a table crushed through it, thereby causing some boiler sheets to slide off of the table and strike plaintiff, one of defendant's employees, breaking his leg and causing other injuries to him.

The defendant denied any negligence on its part and alleged that plaintiff was fully acquainted with the construction of the floor and assumed all the risks incident thereto, and to the work at which he was engaged at the time of the accident; and also alleged that the plaintiff and his co-employees directly contributed to the accident by their negligence in improperly loading the table. The building where the accident occurred had been built about a year preceding the occurrence, and the ground enclosed by the building was uneven, and a contract had been made by the defendant with one Martin to fill in and level up the ground, and also a subsequent contract to build a floor. Martin was a contractor and capable builder, and was entrusted with entire charge of the work, and he proceeded to level up the place with dirt and ashes and to lay on top of them a hemlock plank, two inches thick upon stringers four by four, and four feet apart, ashes being back of and around the stringers. In March, 1881, the floor and foundation, where the injuries were received, were placed. The latter flooring and foundation were built under a contract made by the defendant with one Fairchild who had had experience in such matters, and whose competency was not questioned upon the trial. The form and method of construction, including the foundation underneath, and the selection of workmen and material were left to his judgment and skill. Plaintiff had been in the employ of defendant, at the time of the injury, for about eight months, and had been about the floor with opportunity to see how the floor and foundation were constructed. When the injury occurred he and five co-employees were bringing sheets of boiler iron, weighing about 290 pounds per sheet, from the yard into the shop and piling them on a "laying out table;" this table had a top about seven by three and one-half feet and was supported by four legs, each about four by six inches at the base where they rested upon the floor, in plain sight of the plaintiff and his co-employees. The sheets were not piled evenly

upon the table, and their attention was called to it, but they continued to pile the iron as before, although some evidence indicates that the floor had begun to sag, and that fact was noticed, and although there were other tables on which the sheets might have been piled. After an accumulation of about thirty-five sheets had taken place one leg of the table crushed through the plank, and the iron slid off and the plantiff received the injuries complained of. Upon the leading questions of fact involved in the case the evidence was quite extensive and considerably conflicting. A verdict had been obtained in a former trial in favor of the plaintiff, and the judgment entered thereon was brought into this court and reversed on account of erroneous rulings made at the trial.

*Frank H. Hiscock,* for the appellant.

*Thomas Hogan,* for the respondent.

HARDIN, P. J.:

(1.) It appears that after the plaintiff received the injuries he was taken home and placed in bed. His mother, who was called as a witness, testified, viz. : " His suffering was bad, very hard ; I guess I know ; he complained of great suffering ; I was up day and night with him." Thereupon the following question was propounded to her : " Q. You may state what complaints of bodily pain he made during the time he was confined in bed, if any ? " This question was objected to as immaterial and improper and inadmissible. Thereupon the court remarked : " The question is too broad." Then the plaintiff propounded the following question : " Q. Well, commence at the early part, just as he was placed in bed and being taken home, and state what complaints of bodily pain he made, or what you observed as to his condition of suffering ? " Similar objections to those already stated were made to this question and they were overruled, and the defendant took an exception. The witness answered : "A. Well, he complained of his back in the first place, and pain in his leg." Thereupon the defendant moved to strike the evidence out. The court denied the motion and the defendant took an exception ; and thereupon the plaintiff propounded the following question : " Q. What complaint did he make ? Tell the jury so that they can hear you, how bad he suffered. A. Well, he complained many times that they hurt him so that he didn't know that he could live through it."

The defendant moved to " strike out the evidence upon same grounds as stated in last objection." The motion was denied and the defendant excepted. The witness stated that he was " taken up and helped on the lounge Christmas morning.". Thereupon the following question was propounded to her : " Now, did he complain of suffering during that time ? " The answer was, " Yes, sir, not much ; not as much as he had nine or ten days the worst of his suffering ; the first nine or ten days were the worst of his suffering."

In *Olp* v. *Gardner* (48 Hun, 169), in an action which was brought to recover damages for injuries sustained by the plaintiff, her husband was allowed, against the objection and exception of the defendant's counsel, to testify as to complaints made by his wife after the day of the accident, of being dizzy headed, of a great roaring in her head and of pain in the back of her eyes. *Held*, that the evidence should not have been received. * * * The evidence of statements made long after the injury as to the effect of the injury, or as to the sufferings endured therefrom, is not competent." In delivering the opinion the court refers to *Roche* v. *Brooklyn City, etc., Railroad Company* (105 N. Y., 294), in which case the Court of Appeals held as follows : " In an action to recover damages for alleged negligence causing a personal injury, declarations of the party injured, made some time after the injury, simply to the effect that he is suffering pain, when not made to a physician for the purpose of professional attendance, are not competent as evidence." We think the rulings made by the trial judge, tested by the cases to which we have just referred, were erroneous.

Respondent calls our attention to *Hagenlocher* v. *The Coney Island and Brooklyn Railroad Company* (99 N. Y., 136). As we understand that case, it is only an authority for holding that it is " competent for plaintiff to prove exclamations, indicative of pain, made by such person at the time of the injury." We think it does not justify all the evidence which was received in the case before us. Our attention is invited to *Lewke* v. *Dry Dock, etc., Railroad Company* (46 Hun, 286), where a witness was permitted to testify that he " saw the plaintiff picked up from the spot where he received the injury. The plaintiff then came to his store and the witness noticed the condition of his clothes, and that his left leg seemed to be swelling. It was at this time that he

complained of pain in the limb." And it was stated by the court in this case, viz.: " And it would seem that the complaint in the present case, made so soon after the accident, and while the plaintiff's injured leg was visibly swelling, was so closely allied to mere exclamation as to justify the reception of the evidence." If we were to give full effect to all that was decided in this case, it would not justify the reception of all the evidence received in the case before us. The opinion contains no reference to *Roche* v. *Brooklyn Railroad Company* (*supra*). In the latter case PECKHAM, J., said: " Her declaration that it pained her very badly is mere hearsay and should not have been permitted." Applying that rule to the case before us, we think some of the evidence given by the plaintiff's mother was inadmissible and erroneously received.

(2.) The case states, viz.: " During his summing up to the jury counsel for the plaintiff stated to the jury that he would read to them the law applicable to this case, as it had been laid down by the Court of Appeals, and commenced to read to them authorities." Thereupon the counsel for the defendant objected. The court permitted the authorities to be read, and the defendant took an exception thereto. While we do not propose to examine the question involved in the exception, and place our decision upon the ruling made in respect to the right of counsel to read authorities to the jury, we may observe, in passing, that it was the duty of the trial court to instruct the jury as to the law of the case, and we may call attention to the appropriate remarks of BRADY, J., in *Lesser* v. *Perkins* (39 Hun, 343), in dealing with a similar question. He says: " The practice of reading to the jury, as done here, has been condemned by a number of adjudged cases. (*People* v. *Anderson*, 44 Cal., 70; *Tuller* v. *Talbot*, 23 Ill., 357; *Sprague* v. *Craig*, 51 id., 288; *Reich* v. *Mayor of the City of New York*, 17 Week. Dig., 141; *Allaire* v. *Allaire*, 39 N. J. Law Rep., 113; *Koelges* v. *Guardian Life Ins. Co.*, 57 N. Y., 638.) Perhaps in this State it may be done where the matter read is the law of the case, and can by no possibility prejudice the adverse party. (*Koelges* v. *Guardian Life Ins. Co.*, *supra*.) But, nevertheless, it must be said that it is a custom more honored in the breach than in the observance, and, further, should not be allowed as long as the jury are required to accept for their guidance the legal rules pronounced

by the court. If a counsel desires to call the attention of the court to rule, doctrine or maxim, and to illustrate by treatise or adjudication, it is proper to do so; but the jury, if addressed on the subject by counsel, may confuse the instruction and the reading and thus obstruct, if they do not defy, the administration of justice." The observations made by the learned judge meet with our approval, and accord with the general practice which has come under our observation.

(3.) Defendant requested the court to charge the jury, viz.: " That if the jury find it was negligent for Dee, plaintiff's foreman and co-employee, to continue piling up iron on the table in question after he saw the floor sag thereunder, and that such negligence caused the accident, then plaintiff cannot recover." The court refused to give the charge as requested, but did charge the same, adding thereto the words: " Provided defendant had performed its duty in the construction of the ground work and floor in question." The defendant also asked the court to charge: " That if the jury find that plaintiff, prior to the accident, knew of and appreciated the manner in which defendant's floor was constructed, then he assumed the risk of the defect, if any, and its construction." This request was refused and the further request was made: " That if the plaintiff was capable of and had the opportunity by knowing thereof, prior to the accident, of judging of the propriety of the form of construction of defendant's floor, then, having continued in its employ, he cannot recover." This request was refused.

In *Shaw* v. *Sheldon* (103 N. Y., 668) it was said by the Court of Appeals, viz.: " The majority of the court are of opinion that this judgment should be reversed for the reason that the facts established, beyond dispute, that the injured employee entered upon the service and remained in it with a full knowledge and appreciation of the risk and danger resulting from leaving the couplings uncovered. The fact was entirely obvious, the resultant peril plain at a glance, and the injured servant, a skilled workman, a foreman of the rollers, accustomed to the machinery and the service and having the capacity and ability to fully appreciate the consequences of leaving the couplings uncovered. Within the rule applicable to such cases, the plaintiff's intestate took upon himself the risk of injury from the observed and obvious omission."

We think the trial judge did not keep within the principle laid down in the case from which we have just quoted, and the judgment and order should be reversed on the exceptions and a new trial ordered in the County Court of Onondaga county, with costs to abide the event.

MARTIN and MERWIN, JJ., concurred.

Judgment and order of the Onondaga County Court reversed on the exceptions and a new trial ordered, with costs to abide the event.