## L. ADA KENNEDY *et al.*

*v.*

## JAMES R. KENNEDY.

*Opinion filed February 21, 1902.*

1. FRAUD—*fraud is not to be presumed.* The law presumes that people are honest in their transactions, and that the same are entered into in good faith, and not fraudulently.

2. DEEDS—*presumption that grantor knew the contents of deed.* If a grantor is able to write and there is no proof that she could not read writing, she is deemed, in law, to have known the contents of her deed, although it is in the handwriting of the grantee and is not recorded until after her death.

APPEAL from the Circuit Court of Washington county; the Hon. B. R. BURROUGHS, Judge, presiding.

JAMES A. WATTS, and CHARLES T. MOORE, for appellants.

WINKELMANN & BAER, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Washington county dismissing a bill filed there by appellants, against appellee, upon the hearing of the evidence. In December, 1900, appellants filed their bill to set aside a conveyance of the fractional north-east quarter of the south-west quarter of section 31, township 2, range 4, west of the third principal meridian, averring that Eleanor M. Kennedy, the mother of appellants and appellee, had on the 15th of February, 1897, conveyed to appellee lots 11 and 12, in block 5, Pothoff's addition to the town of Elkton; that appellee wrote the deed, and that by fraud, and without the knowledge of the said Eleanor, appellee had inserted in said deed a description of the farm land above mentioned, and asked to have the deed, to that extent, canceled. The cause was heard and the chancellor found the issues for appellee and dis-

missed the bill. Appellants complain of this order, which is the only error insisted upon.

The evidence shows that the land in question, together with other lands, was originally owned by the father of appellee, and that in 1872 the father made some sort of division of the land among his children, the exact nature of which is not very clearly shown by the evidence, but it is definitely shown that at that time he conveyed, by deed, this land in controversy, and other land, to the appellee, in which deed Eleanor M., the mother of appellee, joined. This deed was placed of record about the time it was made, and was commonly known about and understood by the family. Afterwards the father died, and the children seem to have gotten together and all executed a conveyance conveying the lands that were left by the father, and including the land in question, to Eleanor, the mother, for the consideration of one dollar and filial duty, as expressed in the deed. This deed was made in 1881. Eleanor, the mother, continued to enjoy the income from all these lands from that time to 1897, when the deed complained of was made. In the deed sought to be set aside there was also a condition that the land so conveyed should be retained and enjoyed by Eleanor for the remainder of her life. It also appears that in 1893 Eleanor, the mother, signed an agreement or statement, which was *ex parte* and without any stated consideration, in which she stated "that the personal property and real estate now in my possession, and acquired or that came to me as part of the estate of William Kennedy, deceased, shall so remain until the time of my death, and at that time it is my desire that it be equally divided between each of the above named heirs, my children." The parties named in that agreement as second part are the same as the parties to this suit. This agreement was not of record, and there is no proof showing that J. R. Kennedy, the appellee, ever had any knowledge of its existence or took any part in having it executed.

The only evidence offered as tending to support the charge that the description of this property was fraudulently or secretly placed in the deed was what may be termed inferential or circumstantial, and was as follows: Robert Ardrey, the notary public who took the acknowledgment, testified that when appellee came to ask him to go and take the acknowledgment, he said "he wanted me to come over to his place and take an acknowledgment of his mother to a deed to some lots in Elkton; that she was old and couldn't well come over;" that when he got to the house the deed was written and that he did not examine it, but simply asked Eleanor, the mother, if it was her deed, and she said it was, and that she signed it and he took it to his office and acknowledged it; that he did not examine it to see whether the land in question was described in it or not. The next circumstance relied on was the fact that the deed was in the handwriting of appellee, and the next, that after the death of the mother appellants and appellee met at the office of the county judge to discuss the question of administration and determine upon some method of settling up the mother's estate; that after considerable talk it was determined to have no administration, but that what funds were on hand should be taken to pay the debts, which, together with the rents accruing, would be ample, and that they would make to one sister, Lou K. Auld, a power of attorney to handle the lands and collect the rents; that appellee was present and took part in the transaction; that the land in controversy was included in the power of attorney above agreed upon; that the power of attorney was indefinite as to time, and simply conferred power "to care for the land, collect the rent and pay taxes." From this evidence it is argued that the acts of appellee were inconsistent with his present claim of ownership of the land by virtue of the conveyance sought to be set aside. It may also be remarked that the deed from the mother to appellee was not placed of record until after

the death of the mother, and that fact is urged as another circumstance tending to support complainants' bill.

It is further urged that the clause reserving the right to the mother to receive the rents during her lifetime, that was inserted in the deed from her to appellee, was so inserted after the time the deed was acknowledged, and that such fact is apparent from an inspection of the deed, wherein it is argued it can be readily discerned that in writing certain words across the place where the seal was impressed in the deed, the irregularity of the letters shows the writing to have been done after the impression of the seal was made. In order that the original deed might be inspected it was properly ordered sent up to this court and is in the record. We have examined the same and the argument of counsel concerning it, and are unable to say that there is any very clear appearance that the writing was done after the seal was placed upon the deed.

Nor do we think any of the foregoing evidence relied upon by appellants furnishes much ground for the contention that the conveyance was obtained by fraud. The land in controversy was the land of appellee before the death of his father and without consideration was conveyed to his mother, and, so far as the deed shows, that conveyance was absolute. She enjoyed the benefit of the land until close to the time of her death, when she made the deed conveying it back to the son for the consideration, as expressed therein, of one dollar and parental love. We are rather impressed with the belief that this mother felt that in giving back to appellee the land that he had conveyed to her years before, she was doing simple justice, and that the facts relied upon by appellants are not sufficient to raise even a reasonable presumption of fraud Fraud, however, is not to be presumed, except on proof. The law presumes that people are honest and that their transactions are made and done in good faith, and not fraudulently. (*Schroeder* v. *Walsh*,

120 Ill. 403.) Appellants' mother, the grantor, could write, and the presumption is she could read writing, as there is nothing in the evidence tending to show she could not, and she is deemed, in law, to have known the contents of her deed, and if she did, appellants have no cause for complaint. (*Doran* v. *Mullen*, 78 Ill. 342.) This is not of the class of cases where the creditor may claim that in law the conveyance is fraudulent as to him because without consideration, or because it might have a tendency to hinder or delay him in the collection of his demand. If there is anything in the charge in this bill, appellee was guilty of a criminal act. If written in after the deed was acknowledged it was a forgery; if written in before and without the knowledge of the grantor it was a fraud. There is no averment that it was a forgery, and yet, taking what evidence there is upon the subject and the contention of appellants, the ground most relied upon would be the theory of forgery, and if this charge could be held within the allegation of fraud it is not proven.

Appellants have argued the mother was old, and that this proof, from the relation existing between the parties of parent and child, and the age of the mother, would raise the presumption that undue influence or some improper means had been used by appellee. There is no allegation in the bill of any undue influence, and if there was, there is no evidence to support it. It does not appear from the evidence what the age of this mother was, nor does it appear that she was not as capable, if not more so, than any of the parties to this suit to transact business. In fact, the course of dealing of these parties with the mother would rather tend to show that they had absolute confidence in her capacity and in her sense of justice, as everything was unconditionally placed in her name.

We think the chancellor, having these witnesses before him and hearing their evidence, was not likely to receive a wrong impression as to the facts or the weight

of the testimony given, and we are unable to say that his conclusions were not fully warranted by the evidence.

The decree of the circuit court of Washington county is affirmed.

*Decree affirmed.*