## William L. Ellwood Ex'r, etc., v. Charles J. Walter, Adm'r, etc., et al.

1. MORTGAGE—*Defendant May Show that it Was Executed to Defraud Creditors.*—Upon a bill to foreclose a mortgage the defendants may show that it was executed without consideration for the purpose of defrauding creditors.

2. MASTER—*Action Must be Reviewable by Court.*—It is improper to refer a cause to a master with directions to determine a matter and take final action thereon without further review by the court.

3. SAME—*Course to be Pursued.*—It is ordinarily advisable that the master should receive the evidence subject to objections, till the conclusion of the testimony, so that the testimony objected to may be in the record where it can be examined by the court on the hearing of the exceptions, if the court shall be of the opinion that it is competent.

4. SAME—*Authority upon a Reference to Take and Report Proofs with Conclusions of Law and Fact.*—Upon a reference to take and report proofs with conclusions of law and fact, the master has authority to rule upon objections to the testimony offered, though unless it is entirely clear that the evidence is incompetent, the master should permit the testimony to be taken down subject to objection, so that it may be afterward considered without a re-reference if the master's rulings should be held incorrect.

5. EVIDENCE—*Of Reputation for Honesty and Integrity.*—Where the pleadings did not put one's reputation or character in issue and no witness had attacked his general reputation in those respects, it is proper to reject evidence of his general reputation.

**Bill to Foreclose Mortgage.**—Appeal from the Circuit Court of Peoria County; the Hon. LESLIE D. PUTERBAUGH, Judge presiding. Heard in this court at the April term, 1902. Reversed and remanded. Opinion filed July 18, 1902.

COVEY, MANN & COVEY, attorneys for appellant.

GRAFF & MILES, attorneys for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was a bill filed by William L. Ellwood, executor *de bonis non* with the will annexed, of the estate of John Goodhardt, deceased, against Charles J. Walter, administrator of the estate of Robert F. Walter, deceased, and against the widow and heirs of said deceased, Charles J. Walter being one of said heirs. The object of the bill was to foreclose a mortgage upon certain real estate in Peoria executed by Robert F. Walter and his wife to John Goodhardt to secure a note for $2,600 and interest, signed by Robert F. Walter and payable to John Goodhardt, dated October 30, 1896, and payable on or before five years after date. Though the wife of Robert F. Walter executed the mortgage, she did not acknowledge it. The property was homestead, and the homestead right was therefore not waived. While the note and mortgage were dated October 30, 1896, the mortgage was not filed for record till November 1, 1898. The answer of the defendants denied indebtedness from Robert F. Walter to Goodhardt; denied the execution and delivery of the note and mortgage; denied that any sum was due complainant on account of the note and mortgage; set up the homestead right; alleged that said note and mortgage were wholly without consideration, fictitious, fraudulent and void, and were executed and delivered to Goodhardt to temporarily delay the creditors of Robert F. Walter in the collection of debts against him, he being at that time financially embarrassed; that Goodhardt paid no consideration and was fully informed at the time of the execution and delivery of the mortgage that it was fictitious, fraudulent and void, and knowingly assented to said fraudulent purpose; that the mortgage was recorded for the sole purpose of carrying out said fraudulent purpose; that the creditors were thereby temporarily delayed and hindered in the collection of their claims; that said creditors were afterward paid; that Goodhardt died before the release of the mortgage could be made, as was intended and agreed; and that the note mentioned in said bill is not the note described in the mortgage, but a different one, executed at another and different time.

Ellwood v. Walter.

The cause was referred to the master to take and report the proofs, with his conclusions of law and fact.  He took proofs and reported the same with his findings that the mortgage was executed and acknowledged October 30, 1896, by Robert F. Walter, and remained in his possession about two years, and was then altered by him to appear as the mortgage of Walter and his wife, the words " Anna Walter, his wife," being inserted at the time in the body of the mortgage, and her signature added thereto, and that about that time a note was drawn to correspond with the phraseology of the mortgage, and signed by Robert F. Walter, and that if any note was drawn at the time of the original execution and acknowledgment of the mortgage, such note is not the note in question; that the mortgage and note were delivered to Goodhardt and recorded, for the purpose of hindering and delaying the creditors of the firm of Walter & Son, of which Robert F. Walter was a member, and were fictitious and fraudulent; that complainant was not entitled to foreclose, and the bill of complaint was without equity.  Objections were interposed before the master and overruled, and exceptions filed thereto in the Circuit Court, which were overruled, and a decree was entered dismissing the bill.  From that decree complainant prosecutes this appeal.

It is argued that though a mortgage be fraudulent and void as to a creditor, yet it is binding between the parties, and neither party can set up its fraudulent character to defeat its enforcement.  Whatever may be the rule in other states, the law is settled in this state that upon a bill to foreclose a mortgage the defendants may show that it was executed without consideration for the purpose of defrauding creditors.  Miller v. Marckle, 21 Ill. 152; Dunaway v. Robertson, 95 Ill. 419; Ryan v. Ryan, 97 Ill. 38; Tyler v. Tyler, 126 Ill. 525; Kirkpatrick v. Clark, 132 Ill. 342; Scott v. Magloughlin, 133 Ill. 33.

The master in chancery ruled upon the testimony, sustaining some objections interposed by the appellant and some interposed by the appellee, and refused to permit appellant

to offer a certain line of testimony. It is argued that a master in chancery is a ministerial and not a judicial officer; that ruling upon the competency of evidence is the exercise of judicial authority; and that a master can only take and report the evidence submitted, and can not rule upon its competency. It has indeed been held that the master is not a judicial but a ministerial officer, but that expression was evidently used in the sense that he can make no final determination of a judicial matter. He is also called the arm of the court, and he is generally held to have such powers as a court of equity may confer upon him, provided they are left subject to review by the court. But where a cause has been referred to a master with directions to determine a matter and take final action thereon without further review by the court, this has been held improper. Boston v. Nichols, 47 Ill. 353; DeLeuw v. Neely, 71 Ill. 473; Ennesser v. Hudek, 169 Ill. 494. It may be that when a cause is referred to a master to take proofs only, he has no authority to rule upon testimony, but acts as any other officer taking a deposition. The conclusion seems inevitable, however, that when, as here, a cause is referred to a master to take and report the proofs with his conclusions of law and fact, he must directly or indirectly pass upon the competency of the testimony. For example, in the present case, Charles J. Walter was examined as a witness for the defendants. His testimony, if competent, strongly tended to overthrow the note and mortgage. Objection to his competency was made before the master. The master permitted the witness to give his testimony so that it might be in the record, and then sustained the objection and held the evidence incompetent. Suppose this had been the only testimony by the defendants in support of the answer, and it was not rebutted, then whether or not the master made a direct ruling sustaining or overruling the objection to the competency of the witness, he could not report his conclusions of law without determining in his own mind that that testimony was competent or incompetent. If he decided it was competent, then he would report that the case made by the note and

mortgage was overcome, and the bill should be dismissed. If he held the witness incompetent, he would report that there was no competent testimony to defeat the note and mortgage, and complainant was entitled to a foreclosure. This is merely by way of illustrating that which must often occur before the master upon such a reference. No doubt it is ordinarily advisable for the master to pursue the course approved in Gordon v. Reynolds, 114 Ill. 118, 125, of receiving the evidence subject to objections, till the conclusion of the testimony, so that the testimony objected to may be in the record where it can be examined by the court on the hearing of the exceptions, if the court shall be of the opinion it is competent. Goelz v. Goelz, 157 Ill. 33, 39. But this only relates to the manner of procedure, and not to the authority. It seems to us that on principle the master must necessarily determine the competency of the evidence in a cause referred to him to report his conclusions.

Our attention is not called to any case where the Supreme Court of this State has directly passed upon the power of the master to rule upon objections to testimony, but the question has frequently been inferentially determined. In McClay v. Norris, 4 Gil. 370, 386, the court quotes with approval from Barbour's Chancery Practice, as follows:

" There is no question of law or equity or disputed fact or facts which a master may not have occasion to decide upon, or concerning which he may not be called upon to report his opinion to the court."

In Brockman v. Aulger, 12 Ill. 277, 280, the court points out the procedure by the master if a witness " refuses to answer a particular question allowed by him," implying the master is to determine whether the question is proper, and in so doing is to allow or reject the question. In Hurd v. Goodrich, 59 Ill. 451, 455, the court points out the procedure for parties " who may desire to have the court revise the rulings of the master as to the admission or rejection of evidence." In Cox v. Pierce, 120 Ill. 556, it is held that testimony taken on such a reference is " taken on the trial." In Whiteside v. Pulliam, 25 Ill. 285, and in U. M.

L. Ins. Co. v. Slee, 123 Ill. 57, 94, it is held that upon the hearing before the master " the parties have the same right to be heard by themselves or by counsel, to introduce evidence, cross-examine witnesses, and to take the various steps authorized by law, as if the hearing was before the chancellor instead of the master." In Cheltenham Improvement Co. v. Whitehead, 128 Ill. 279, the court said:

" If, in the opinion of the plaintiff in error, the evidence offered before the master was incompetent, or insufficient to establish the claim, he was required to file exceptions before the master, and if overruled there, renew the exceptions in the Circuit Court."

This implies, objections to the evidence for incompetency are to be ruled upon by the master." To the same effect is Gehrke v. Gehrke, 190 Ill. 166. In Minchrod v. Ullmann, 163 Ill. 25, speaking of the action of the master under such a reference, the court said:

" Like the chancellor, he is presumed to have considered all the competent evidence tending to prove or disprove the fact in question."

In Bauerle v. Long, 165 Ill. 340, a defaulted defendant appeared before the master on a reference, and after cross-examining witnesses, offered evidence in certain matters, and made an offer to prove certain facts in his behalf. The master rejected the offered testimony. The refusal of the master to allow him to introduce this testimony was assigned for error. The court sustained the ruling of the master. In Ronan v. Bluhm, 173 Ill. 277, the master reported objections to certain oral testimony, and to certain documents offered before him, and reported his conclusions of law that the oral proof was competent and the documents incompetent, and reported that he refused to receive the documents in evidence for any purpose. The Supreme Court passed upon these rulings and held that the master erred in his conclusions as to the competency of the proof, but gave no intimation that the master was without power to rule, and proceeded upon the apparent assumption that the master had such authority. In

Harding v. Harding, 180 Ill. 480, 504, it was held that the master had admitted incompetent evidence under such a reference, but as there was sufficient competent proof to sustain that portion of the decree to which such evidence applied, the court refused to reverse because of the incompetent evidence. In Brueggestradt v. Ludwig, 184 Ill. 24, proof had been taken on a like reference. The Supreme Court set out a rule of the trial court giving the master under such a reference full power to determine the competency of the witness and the propriety and relevancy of the questions, and directing the manner of preserving and reviewing his rulings upon testimony. The master had sustained an objection to the testimony of a certain witness for appellees, and to certain copies of entries, and of a record, the correctness of which copies appellees sought to prove by him. The Supreme Court held the master's ruling was in part incorrect, and that the proper practice would have been for the Superior Court to have re-referred the cause to· the master with instructions to admit the testimony of the rejected witness, when appellants could have cross-examined him, and could have produced evidence to disprove his testimony or explain the entries or record; but as this was an error against appellees, and there was other proof sufficient to sustain the decree, it was in those respects affirmed. Surely if a master has no power to rule at all upon the competency of the testimony the court would not have set out at length the rule of the court below which regulated the procedure in so doing. In Schnadt v. Davis, 185 Ill. 476 and 487, the court said the master "is in a sense clothed with the power to declare judgment upon the rights and interests of the parties."

The same view has been expressed by other courts. In Pratt v. Adams, 7 Paige Ch. 615, where by the reference the master was specially directed to rule upon the interrogatories propounded, the court said (p. 645):

" If any party is dissatisfied with the decision of the master in allowing or disallowing an interrogatory to the claimant, he must put it in shape to enable the court to

review the master's decision; and if the master decides that the interrogatory is improper, he should not allow it to be put or answered."

In McCrackan v. Valentine's Executors, 9 N. Y. 42, under a reference to take certain proofs and make a computation, the referee refused to permit certain testimony to be introduced. It was held the ruling was correct. In Nichols v. Ela, 124 Mass. 333, on a reference to state and report the accounts between the parties, it was held it was within the discretion of the master to limit the cross-examination of a witness. In Gibson v. Trowbridge Furniture Co., 96 Ala. 357, there was a reference to a register to ascertain the amounts due certain parties and the value of certain assets. The register made numerous rulings on the admission of evidence, to which exceptions were preserved. The court reviewed these rulings, and held some of them correct and others incorrect, without any intimation the register had no power to rule upon the objections. In Floyd v. Floyd, 46 S. Car. 184, there was a reference to a master to hear and determine all the issues. The master held certain offered proof incompetent, but took it down and reported it on a separate sheet, and reported for the plaintiff, and reported that if the incompetent testimony was considered, still plaintiff was entitled to recover. The trial court held the master was right in excluding the testimony, and right in his conclusions. The Supreme Court held the proper practice had been pursued, and the conclusion of the trial court was correct. In Schwarz v. Sears, Walker (Mich.), 19, and in Ward v. Jewett, Walker, 45, it is clearly implied that the master has authority to rule upon the admission of the testimony, subject to review by the court, the only difference between those authorities and our courts being that the two cases just cited require a review by the court immediately, upon motion, before the master has made his report. To the same effect is Troy Iron and Nail Factory v. Corning, 6 Blatchf. 328. In Jackson v. Jackson's Executors, 2 Green's Ch. (N. J.) 96, the court held the master erred in permitting a certain cross-

examination. In De La Riva v. Berreyesa, 2 Cal. 195, it was held the referees admitted much hearsay and irrelevant testimony which they should have excluded. In England, where the master passed upon interrogatories before they were propounded, the vice chancellor, in Chennell v. Martin, 4 Simons, 340, 6 Cond. Eng. Ch. R. 154, said:

" It constantly happens * * * that when the master has made his report, an exception is taken, because either he has admitted or rejected evidence that he ought not; and it is not the course of the court, and great inconvenience would result if it were the course, to apply, before the report is made, for an order that the master shall reject or admit proposed pieces of evidence. The propriety of what he has done is discussed on exceptions to the report. * * * I must wait till the master makes a report, and then, on exceptions, determine whether he has acted rightly in refusing to examine the defendants at all, or in any given manner."

The cases there commented upon show the constant practice by masters of ruling for or against interrogatories submitted. In 17 Ency. of Pl. & Pr. 1023, the general rule there deduced from the authorities is thus stated:

"A master or referee is governed by the ordinary rules of evidence by which a court would be governed, and he should hear and exclude evidence as if the hearing were before the court. * * * In determining the order in which proof should be submitted, the latitude which should be given parties in the examination and cross-examination of witnesses, and in many other respects, the master or referee is governed by the same rules and exercises the same discretion as the court."

We therefore conclude, both upon principle and authority, that upon a reference to take and report proofs with conclusions of law and fact, the master has authority to rule upon objections to the testimony offered; though we are also of opinion that unless it is entirely clear that the evidence is incompetent, the master should permit the testimony to be taken down subject to objection, so that it may be afterward considered without a re-reference if the master's ruling should be held incorrect.

The master properly sustained the objection to the com-

petency of Charles J. Walter as to matters occurring in the
lifetime of Goodhardt, as said witness was a party defend-
ant, part owner of the land, and was called as a witness
against Goodhardt's executors, and in his own interest.
The master refused to permit appellant to prove the general
reputation of Goodhardt in the neighborhood where he
lived, for honesty and integrity. The pleadings did not put
his reputation or character in issue and no witness had
attacked his general reputation in those respects. We con-
clude the ruling was correct. Simpson v. Westenberger,
28 Kan. 756; 42 Am. R. 195 and note; Stone v. Hawkeye Ins.
Co., 68 Iowa, 737; 56 Am. R. 370. An expression appar-
ently to the contrary is found in Sprague v. Craig, 51 Ill.
288, but the question there presented made the proper rule
analogous to that governing criminal proceedings, and we
think it not in point here. It was charged here that Good-
hardt received no consideration for this note and mortgage.
That was a question of fact, pure and simple. If he did
not, then he can not enforce them, no matter how good a
general reputation for honesty he may have had. It is
charged that, having received no consideration for them,
he placed the mortgage on record to delay Walter's cred-
itors. If there was no consideration his executor can not
enforce the mortgage, no matter what Goodhardt's purpose
in recording the instrument may have been. We conclude
the reasoning in the cases cited from Kansas and Iowa is ap-
plicable to this case. We think the master unduly restricted
the cross-examination of the witness Grimes, in view of the
bias for defendants he manifested, and the many improper
statements he made while testifying. Jacob Fischer was
called as the first witness for complainant and by him the
signature of Robert F. Walter to the note was proven, and
that the value of the property covered by the mortgage far
exceeded the unreleased homestead interest. No objection
was then made to his competency to testify. Fischer was
again called by complainant in rebuttal, and on his cross-
examination then, it was brought out that he and his sister,
Mrs. Anna Walter, the widow of Robert F. Walter, were

the legatees and devisees of John Goodhardt, deceased, and the only persons interested in his estate.   Defendants then objected to his testifying on the ground that he was interested in the event of the litigation and therefore incompetent under the statute.   The master sustained this objection. Complainant then offered to prove certain material facts by Fischer, to which defendants objected and the master sustained the objection and held him not a competent witness.   Fischer was directly interested that the complainant should succeed, as it would enhance the estate of which he was a part owner.   He was therefore not competent to testify as to facts occurring in the lifetime of Robert F. Walter in behalf of the complainant against the defendants, who were defending as administrator and heirs of the mortgagor.   Part of the heirs of Robert F. Walter are minors and defending by guardian *ad litem*, and Fischer was also incompetent to testify against their interest as to matters occurring during their minority.   The defendants did not move to exclude what Fischer has testified to when first called, and the master in his report found Robert F. Walter did sign the note.   It is manifest that if objection is made Fischer is not competent to prove the signature to the note.

Grimes was the only competent witness who gave testimony tending to impeach the note and mortgage.   He testified the transaction was fictitious; that there was no consideration for the note and mortgage; that the papers were delivered and the mortgage recorded to protect Robert F. Walter from his creditors, and that this was the agreement between Goodhardt, Robert F. Walter and Charles J. Walter, under which the papers were made and delivered, and that he positively knew this to be so.   He testified freely what the parties understood, and that Goodhardt understood the mortgage was fictitious, etc.   Yet his further examination showed that he knew no fact which would impeach these securities, and that his testimony was mainly based upon suspicions, assumptions and information derived from Charles J. Walter, an incompetent witness, and one whose statements, in his own favor, must also be incompetent.

Grimes does show that a day or two before the mortgage was recorded it was brought to his office by Charles J. Walter; that it had not then been signed by Anna Walter, the wife, and her name had not then been written in the body of the instrument; that there was no note with it; that he showed Charles a blank note and directed him how to fill it up so as to meet the description in the mortgage; that he carried the blank form to the house and Charles there filled it out in the presence of Mrs. Walter; and that he saw no money or other consideration paid. He did not see the note signed or the note and mortgage delivered to Goodhardt. He does not know they were not so delivered. He does not know what occurred when they were delivered. He has no knowledge but what $2,600 was then paid, or but what Robert F. Walter then owed Goodhardt $2,600 which this note and mortgage were delivered to secure. He never talked with Robert F. Walter about it. He did not see Robert F. Walter at the time he was at the house when the note was written. He never was present when Robert F. Walter and Goodhardt, the mortgagor and mortgagee, were together. He does not know what their dealings were relating to this matter. He never talked with Goodhardt about it till after the death of Robert F. Walter. He did have a conversation with Goodhardt after Walter's death. In one narration of that conversation he said he characterized the mortgage as fictitious, and Goodhardt did not make any reply to that statement, but in another narration of the same conversation he omitted that statement. All that Goodhardt said to Grimes on the subject of this mortgage in that conversation can well be interpreted as a polite intimation that he, Goodhardt, was entirely able to attend to his own business and did not require any instructions from Grimes. No fact stated by Grimes of his own knowledge is inconsistent with the proposition that when the mortgage was executed and acknowledged by Walter the transaction was not completed; that the last of October, 1898, the note intended to be secured by the mortgage was drawn and signed, the note and mortgage then for the first

Ellwood v. Walter.

time delivered, and for an adequate consideration, a loan of money then, or to secure money loaned or advanced when the mortgage was originally drawn, or some other existing debt. The note recites it is given for value received, and Grimes' testimony does not overcome that recital. There is other proof of financial dealings between Goodhardt and Walter and of moneys paid by Goodhardt for Walter to a considerable amount. The incompetent testimony of Charles J. Walter seems to have unconsciously affected the conclusion of master and court. We are of opinion the actual facts proven by competent testimony were not sufficient to overcome the note and mortgage. The law presumes this was an honest and genuine business transaction, till the contrary is shown. (Kennedy v. Kennedy, 194 Ill. 346.) We think we ought not to affirm the decree on the ground the signature of Walter to the note was not proven by a competent witness, in view of the fact defendants did not then object to Fischer's testifying, and did not afterward move to exclude his former testimony especially as the master found as a fact that Walter did sign the note, and the decree is in harmony with that finding.

It is assigned for error that the court allowed the present and a former guardian *ad litem* $10 each for fees as such, to be taxed as costs, without proof that the allowance was reasonable. Section 6 of the chancery act provides that the guardian *ad litem* shall be allowed a reasonable sum for his charges as such guardian, to be fixed by the court, and taxed in the bill of costs. This allowance was not for fees as solicitors, and was a nominal sum, and we think the court was authorized to make such an allowance without proofs.

For want of sufficient competent proof that the note and mortgage were without consideration and fraudulent, the decree is reversed and the cause remanded for further proceedings.